RAILWAY CO. *v*. STATE.

(*Jackson.* June 1, 1889.)

1. STREET RAILWAY. *Continuing duty to repair.*

A street railway company is bound to keep its entire road-bed, to the ends of its ties, and its crossings, in repair, so as not to obstruct travel across its road or longitudinally upon it, and this duty is a continuing one, whether the charter so expressly requires or not.

Cases cited and approved: L. & N. Railroad Company *v*. The State, 3 Head, 524; Am. and Eng. Railway Cases, Vol. X., page 332, note; Burritt *v*. City of New Haven, 42 Conn., 174.

Cited and overruled: Railroad *v*. The State, 16 Lea, 300.

2. STREET RAILWAY COMPANY. *Indictment.*

A street railway company, failing to so repair, and thereby obstructing travel, is indictable for maintaining a nuisance, and, upon failure to abate the nuisance, the obstructions may be removed by order of the Court.

FROM SHELBY.

Appeal in error from Criminal Court of Shelby County. May Term, 1888. J. J. DuBOSE, J.

GANTT & PATTERSON for Railway Company.

JAMES M. GREER and Attorney-General PICKLE for the State.

J. M. DICKINSON, Sp. J. The defendant railway company and Wm. Katzenberger were indicted for

creating and maintaining a nuisance in McLemore Avenue, Shelby County, and it is charged that such nuisance was consequent upon the unlawful location and improper maintenance of a railway on said avenue. Wm. Katzenberger was receiver of the defendant company, and the condition complained of in the indictment existed at the time of his appointment and continued during his management up to the time of indictment.

It appears from the evidence, that the part of the avenue occupied by the track of the defendant company was not, at all points, in such condition that the same could be crossed by travelers on horseback or in vehicles, or be traveled over longitudinally with safety. By an agreed state of facts it appeared that the "railroad tracks, its ties and rails, were above the surface of McLemore Avenue, a public road at the time laid in the indictment, and obstructed public travel on that part of said highway occupied by said railroad, as alleged in the indictment."

The decision of the cause was submitted to the Judge without a jury, and he found defendants guilty as charged in the indictment, fined them one thousand dollars, and ordered the obstructions to be removed, unless defendants should so do within thirty days. It appearing that the receiver had no means and no authority, under his appointment, to abate the nuisance, or pay the fine, the amount of his fine was reduced by the Court to five dollars.

On January 29, 1887, the Memphis, Greenwood,

and Prospect Park Railroad Company was incorporated under the regular form provided for street railroad companies, as set out in §§ 1920–1925 of the M. & V. Code. Section 1921 provides that such companies are "authorized to consummate any contract with the County Court necessary to get the right of way along the public roads of the county."

At the April Term, 1887, said company applied to the County Court of Shelby for permission to lay its tracks upon that portion of McLemore Avenue designated in the indictment, and on April 22, 1887, a contract was made between the county and said company, whereby the county consented to the construction of a railroad by said company upon said portion of McLemore Avenue. This contract contains provisions as to the manner of grading and constructing the road, and provides that the company, "at the crossing of each street and alley on said avenues and roads, shall place good and sufficient crossings, so as not to interfere with travel over such streets and roads."

There is no stipulation for the keeping in repair by the company of any portion of the avenue occupied by its track, or of the crossings.

On October 24, 1887, the defendant, the Memphis, Prospect Park & Belt Railroad Company, was chartered under the form provided for steam railway companies.

Defendant company, so far as the record shows, had no contract with the county, but on November 22, 1887, it purchased the franchises and prop-

erties of the Memphis, Greenwood & Prospect Park Railroad Company, which included the line of railway then being operated upon McLemore Avenue by said company under its charter and its contract with the county.

On April 10, 1888, a committee, to whom had been referred a petition of the Memphis, Greenwood & Prospect Park Railroad Company, reported that they had gone over the track and road-bed of said company located on said portion of said avenue and found the grading satisfactory. Nothing is said in this report, nor in any other proceedings of the County Court, which appear in the record, about the manner of construction of the road, and nothing of the acceptance of the road by the county, as having been constructed in accordance with the contract with the county, as counsel. for the defendant contend.

There was no change in grade, and no repairs from the time of said report up to the time of indictment.

The railroad provided for in the charter and the contract with the county is that known as a street railroad. Such a road contemplates travel upon it longitudinally. This is manifest from the charter, which provides for other vehicles, yielding the right of way over the track and switches to the passing cars, and for the cars yielding the right of way of the track to the fire engines. (M. & V. Code, § 1924.)

There is no proof by defendant as to how the

road was constructed. It relies upon the alleged
acceptance by the county as conclusive evidence
that it was, on April 10, 1888, up to the require-
ments of its charter and of the contract with the
county, and the further legal proposition that,
having so constructed its road, it was under no
obligation to keep the road-bed and crossings in
repair.

As stated above, the County Court did not pass
upon and accept the road. The report relied upon
as showing this fact related merely to grades in
reference to the grades of surrounding county roads,
a uniform system of grading being the particu-
lar matter under contemplation. There is nothing
in the record to show when the nuisance began,
whether the road was a nuisance and obstruction
to travel from the start, or whether it became so
by use and the action of the elements.

The defense is made upon the latter assump-
tion, and it is presumable that the facts are that
way, for otherwise there could be no ground for
contest.

The State and defendants both treat the case
as presenting only the question of duty to repair,
and it will be considered in that aspect.

The doctrine contended for is, that a railroad
company, after constructing its road, and having
restored those portions of the public highway dis-
turbed, to their former state of usefulness, is under
no duty to make any repairs.

The case of *Railroad* v. *State*, 16 Lea, 300, is

relied on as a conclusive adjudication of this question in favor of defendant; but that case has been expressly overruled at this Term in an opinion by Judge Caldwell in the case of *Dyer County* v. *Railroad*, 3 Pickle, 712.

In *Louisville and Nashville Railroad Company* v. *The State*, 3 Head, 524, the following principles, as applicable to the occupancy of public highways by railroads, are stated : " Railway companies are liable to indictment for obstructing a public highway contrary to the powers granted in their act." " The company must so use their own rights as not to injure or take away the rights of others." Pearce on Railroads, page 245, says: " The laying of a railroad across highways often requires excavations and erections, and a greater or less change in the surface. The duty, however, to restore the highway, as far as may be, to its former condition, and to erect and *maintain* structures necessary for such restoration, is presumed to be incumbent on the company, *even without any express requirement imposed by statute.* * * * It is a continuing duty, and binds other corporations which succeed to the ownership or possession of the railroad." To same effect is Mills on Eminent Domain, Section 198.

In a note on page 332, Vol. X., American and English Railway Cases, giving a summary of the decisions on this subject, the following is stated:

"As to the question whether the company is bound to maintain the crossing permanently or not, the current of authority seems to be that it is so

bound. *People* v. *Chicago and Alton Railroad Company*, 67 Ill., 118; *Ergler* v. *County Commissioners of Alleghany County*, 49 Md., 257." And this though by a statute the obligation is in express terms only not to obstruct the safe use of the highway.

Where a statute provided that " a railroad shall be so constructed as not to obstruct the safe and convenient use of the highway," the obligation of the company was held not to be limited to the original construction. "It must keep the railroad so constructed at all times. Its obligation so to do is continuing." *Willcome* v. *Leeds*, 51 Me., 313.

The only case called to our attention holding the contrary doctrine is that of the *M. K. & T. R. R. Co.* v. *Long*, 6 A. & E. R. R. Cases, 254.

In *Burritt* v. *City of New Haven*, 42 Conn., 174, it is declared that the charters of corporations which confer exclusive privileges for the particular advantage of the grantees are to be construed liberally for the benefit of the public, and strictly as against the corporations, and that the duty of a railroad company, under its charter, to restore a highway to its former usefulness was not discharged when it restored it to a proper condition at the time the railroad was constructed, but the duty was a continuing one.

The duty to maintain the usefulness of streets under charters which did not, in express terms, impose the obligation to repair was enforced in

two Minnesota cases, one reported, in 36 N. W. Rep., 870, and the other in 39 Same, 154.

In Woods' Railway Law it is stated that "the right to lay a railway track in a public street or highway carries with it the obligation not only to lay it in a proper manner, but also to keep it in repair;" and "if the statute simply provides that the company 'shall restore the highway to its former state of usefulness,' etc., they are invested with a discretion as to the matter, and are not subject to the control of the municipal authorities in this respect, and are liable for the consequences of a failure to discharge this duty, and are also charged with the further duty of keeping that part of the highway in proper condition. In other words, the obligation imposed upon them in this respect is a continuing one, and they must so restore the highway that its use by the public shall not be materially interfered with, and so that it shall not be rendered less safe or convenient, except in so far as diminished safety and convenience are inseparable from its use by the railroad; and the question whether or not the company has discharged its duty is a question of fact for the jury." See Vol. II., Sec. 269, page 970, note 1, and page 976.

In the case of *Dyer County* v. *Railroad*, 3 Pickle, 712, it was held that where a railroad company makes a cut through a public highway and builds a bridge over its road, the law imposes upon it the continuing duty of repairing the bridge, although its char-

ter did not expressly so require, but simply by its express terms imposed the duty of restoring the highway to its former state of usefulness.

These rules, laid down in respect to steam railway companies, apply not only to the crossings but to the entire road-bed of street railway companies; for their occupation of the street is held not to be a new burden upon the street or a diversion of its use as a highway, for the reason that such occupation is assumed to be entirely compatible with the use by the public. This is based upon the idea that a street railway, properly constructed and maintained, is not an obstruction, though it may be an inconvenience. When it is so constructed or maintained, as to become an obstruction, it ceases to preserve the character upon which its grant of rights in public highways is predicated.

The charter of this company shows that it was intended that the space occupied by it should be used by the public as a highway, the right of way being given to defendants cars. It is its common-law duty to keep the space of the highway occupied by its road-bed (which extends, at least, to the ends of its cross-ties) properly graded and in good repair, so as not to be any obstruction to travel across the road-bed or longitudinally upon it, and also to keep the crossings where its road-bed is traversed by streets in good repair.

The judgment is affirmed, but the fine against the company is reduced to fifty dollars. The cause is remanded for further proceedings, and

defendants are given sixty days from rendition of this judgment to abate the nuisance in accordance with the rule laid down in this opinion; and if they shall fail therein, then the obstructions shall be removed under orders from the lower Court.