## BURCKHARDT *et al. v.* CITY OF ATLANTA.

1. A power conferred by statute upon a city, "to pave again any street on which the pavements are worn out and useless," necessarily carries with it the power to repave only portions of the street where the pavements on such portions are worn out and useless.
2. An ordinance of the Mayor and General Council of the City of Atlanta providing for a repavement of a portion of one of the streets in said city is' not contrary to law because it does not require a street-railroad company, the tracks of which extend over said street, to do any part of the paving.

3. The fact that owners of property bordering on such street paid an amount assessed against them to aid in defraying the cost of an original pavement thereon, does not give them such an interest in the material of the old pavement as will entitle them to an injunction against the city for the purpose of restraining it from removing said material in order to give place for a new pavement.

4. The question of expediency or necessity of repaving the streets of the City of Atlanta, or any portion of said streets, is left to the discretion of said city, acting through its mayor and general council; and the courts will not interfere with the exercise of their powers within the scope of the authority delegated to them by law, unless it is made clearly to appear that their action has been arbitrary and unreasonable.

5. The court did right in refusing the injunction in this case.

Submitted December 13, 1897. — Decided January 20, 1898.

Petition for injunction. Before Judge Lumpkin. Fulton county. September 13, 1897.

In 1883 the City of Atlanta, under the amendment to its charter of September 3, 1881 (Acts of 1881, p. 358), caused Washington street to be paved in its roadway from Waverly place to Crumley street, a distance of 10 blocks, with macadam. In 1897, the city proceeded under the act before mentioned, and under the further amendment to its charter contained in Acts of 1890–91, vol. 1, p. 229, to lay a new pavement on that street for the five blocks from Waverly place to Woodward avenue, with wooden blocks known as the Williams paving-blocks; whereupon the plaintiffs in error, some of whom are citizens and taxpayers residing on Washington street between Waverly place and Woodward avenue, and others of them residing on that street between Woodward avenue and Crumley street, brought their petition for injunction to prevent the city and its agents from proceeding to do this work under the ordinance passed for the purpose; and upon the hearing the injunction was denied.

It appears from the petition, that the plaintiffs, or their predecessors in title, were assessed for and paid their proportionate amounts for the macadam pavement, the total cost of which was $13,766.72, and the amount assessed against the property-holders was $1.54 per front foot. Plaintiffs allege, that the macadam was a good pavement and well suited for a residence street and was so constructed that if kept in repair it would

last indefinitely as a pavement; that at various times the city has authorized a gas company and various plumbers to tear up the macadam to put in pipes to connect with residences and to repair gas and water pipes, and these persons did not properly put the street back in the condition in which it was found when they began their work, whereby slight depressions were caused at various places; and that it was the duty of the city to have caused the street to be put back in the condition in which it was found. Plaintiffs further allege, that the macadam pavement is not worn out and useless, but is being used daily, and is in substantially the same condition for the whole ten blocks; and that while in some places the surface may be rough, the pavement is not worn out and no longer serviceable as a good pavement. The estimated cost of repaving with wooden blocks for the distance now proposed is $17,460, of which the city is to pay $4,200, the street railway, whose line runs on Washington street, $4,860, and the property-holders $8,400. Plaintiffs are informed and believe that wooden blocks for paving were tried in Memphis, Natchez and Omaha, were found impracticable and were believed to be conducive of sickness; that they were afterwards torn up and removed; and plaintiffs fear that if such blocks are laid in front of their residences and permitted to decay, as they certainly would, they would make said residences unhealthy. They object to being taxed again at a more expensive rate for a wooden pavement which can not in the nature of things be as permanent as stone, and when in a very few years they would again be taxed for another pavement. They object to paving a part of the street with one kind of material and another part with another kind. It is a residence and not a business street, and has practically the same traffic over the whole of it. They contend that the city has no power, under the act of 1891, to repave only a part of a street. They object to a part of the funds raised by taxation being taken from the city treasury and expended in repaving a street at heavy cost with an entirely new kind of pavement which could in no sense be called a repair of the existing pavement, until all of the streets of the city are paved, so that the burden of paving them shall fall on all of the citi-

zens equally. It would not cost the city an amount so great as is proposed to be expended for repaving a portion of the street, to put in first class condition the entire street with macadam pavement. The best roads in Fulton county are macadam roads. The macadam is better for residence streets than granite blocks, because not so noisy; than asphalt or vitrified brick, because not so slippery and dangerous for horses; and any of these is better than wooden pavement, because the latter will rot and cause disease. It is charged that the municipal authorities grossly abused their discretion in passing the ordinance, and that the same is unreasonable and null and void. Further, according to the city engineer's report there are 3,700 feet between Waverly place and Woodward avenue, of which amount the petitioners for the proposed pavement signed for 1,554.9 feet, including 105 feet signed for by Adair as treasurer of the Second Baptist Church; and it is denied that he had authority from the church to make such signature. In the remainder are included 314 feet frontage of two other named churches and the parsonage of one of them, 420 feet in front of the State Capitol and 100 feet in front of the Girls' High School property belonging to the city. The street railway company has 3,700 feet for which it is proposed to assess it $4,860, as to which it is not consulted. The cost of the wooden pavement would average $4.71 per front foot; and should the street-railway company, the State, said churches and the High School fail to pay their pro rata parts, the loss would fall either upon the property-holders or upon the city treasury. It is inequitable and unjust that 1,454.9 feet of the frontage should dictate to the entire street and have an entire change of pavement made, when the entire street could be repaired at small cost and thereby have a better pavement than the one proposed to be laid. Plaintiffs have a property right in the macadam which was laid down; and the repaving ordinance in no way recognizes such right, but proposes to take such macadam without allowing any compensation.

The city demurred to the petition for want of a cause of action alleged; and moved to strike the paragraph therein which charges an abuse of discretion upon the municipal authorities,

on the ground that it is merely the expression of an opinion of the plaintiffs. An answer was filed, taking issue with the contentions of the petition, and alleging that the plumbers and others opening the macadam to make pipe connections were not allowed to do the work of replacing it, but this was always done by the city as well as it could be ; that the law of repaving is founded upon the present necessity for a better street, without reference to the causes of its being worn out; that Washington street between Waverly place and Woodward avenue is in much worse condition than that portion beyond Woodward avenue; that the paving with blocks in the other cities named in the petition was not done with the kind of material here proposed to be used ; that the city authorities have carefully investigated the Williams blocks, and the paving will be constructed with a six-inch concrete foundation upon which are to be placed upright wooden blocks of six by four inches, which have been boiled in a composition of asphaltum and malthem to prevent decay from moisture, with a coat of such composition half an inch thick on top to fill all crevices and prevent moisture from decaying the blocks; and that said authorities have exercised their best judgment and discretion in ordaining the repavement with these blocks. It is denied that the street can be repaired with macadam so as to make it first class. This experiment was tried with Capitol avenue, which was paved with macadam about the same time Washington street was so paved ; the trial has been a failure, and the residents of said street are much dissatisfied and many of them are anxious to have the street repaved with other pavement. The matter of paving one part of a street with one kind and another part with another kind of pavement is a matter of municipal discretion, and so as to repaving one street before all streets have been once paved. Churches, schools and parsonages are liable to assessment for the paving; and the State has paid for having one street paved on which the Capitol abuts and will most likely pay for Washington street; but if not, the paving can not be neglected for that reason. The street-railway company, though not consulted, has been heard from, as it generally is upon questions of paving or repaving. Defendant is informed that Adair had

authority to sign the petition for the Second Baptist Church. It is denied that plaintiffs have any property right in the macadam on the street; but if they have, they can not keep it in the street and thereby prevent the repavement. The city does not propose by the ordinance to dispose of the macadam otherwise than to remove it. In repaving other streets it allowed abutting property-owners to take the old material or purchased it from them, and is willing to do the same with Washington street.

At the hearing appeared a number of photographs of parts of Washington street along the route proposed to be repaved, and other photographs of portions of unpaved streets elsewhere in the city. Also, the ordinance of 1883, under which the macadam pavement was laid. Also, a communication signed by the Georgia Paving Co., by Patrick Kelly, president, and addressed to the mayor and council of the city, proposing, for the sum of $4,000, to repair the present pavement of the street, by removing the macadam for a depth of three inches below the grade and replacing the same, under specifications of the city engineer, with fine hard stone incorporated with a binding material, the same to be repeatedly rolled until the entire street is brought to a smooth and satisfactory surface fully in keeping with the best macadamized streets of eastern cities; and to maintain the street thus repaired in good condition for five years, and to give satisfactory bond for faithful compliance with the contract. This was presented to a meeting of the council at which the paving ordinance now opposed was called up for final reading, but it was rejected and the ordinance adopted. Also, a certificate by the city comptroller, that on June 7, 1897, the council apportioned $64,570.85 for permanent street-paving, and that ordinances had been passed for paving four named streets at a total cost of $61,070.85, this including $17,460 for Washington street, leaving available $3,500. A number of affidavits were introduced upon the question as to the condition of Washington street, as to whether the pavement is worn out, and as to the unsanitary effect of wooden blocks for paving purposes.

*Julius L. Brown*, for plaintiffs.

*James A. Anderson* and *John T. Pendleton*, for defendant.

LEWIS, J.   The facts are stated in the official report.

1. By virtue of the act approved October 10, 1891 (Acts of 1890-1891, vol. 1, p. 229), authority is given any city of this State, having a population of over twenty thousand, to pave again any street on which the pavements are worn out and useless.   It is insisted by counsel for plaintiff in error that this authority does not carry with it the power to pave simply a portion of the street.   If this contention be correct, then no part of a street could be repaved until the pavement throughout the entire length of the street had become worn out and useless.   The power to improve "any street" necessarily carries with it the right to improve only a portion of such street.   2 Dill. Mun. Corp. § 799; *Bacon* v. *Savannah*, 86 *Ga.* 301.   Besides this, under the act of December 17, 1892 (Acts of 1892, p. 135), amending the charter of the City of Atlanta, authority is given it in express terms to pave, or contract directly for the paving of, the whole or any portion of any street in said city.

2. When Washington street was first paved, the charter of the City of Atlanta required the street railroad company to do its part of the paving.   (See Acts of 1880-1881, pp. 359-360.) It is contended by counsel for plaintiff in error, that inasmuch as the act of October 10, 1891, above cited, provides for the repavement of streets upon the same terms and conditions as to assessments of property and street-car companies as were in force when such pavements were originally laid, the local legislature of the City of Atlanta had no authority in law to direct a repavement of any of its streets without giving the street-railroad company an opportunity to do its part of the paving.   Subsequently to the act of October 10, 1891, and before the ordinance in question was passed, the charter of Atlanta was again amended, authorizing said city "to require any street-railroad company having or using tracks in such street or portion of street to pay for the paving of the space therein which such company or companies may be required to pave under the existing law, the object of this amendment being to allow the city to pave or contract for the paving of the whole surface of the street, without giving the street-railroad company the option of having the space to be paved by it paved by itself or by a

contractor at its instance." (Acts of 1892, p. 135.) It was, therefore, proper that the ordinance upon the subject of repavement should have followed, as it did in this case, the act last above cited, instead of the original paving act of 1881.

3. If the city has a right to repave its streets, as above indicated, it necessarily follows that it has the power to remove any material on the street that may be in the way of a proper execution of the work. Whether the property-owners have any interest in or title to the old paving material, growing out of the fact that they aided in defraying the original cost of laying such material, it is not now necessary to decide. They certainly have not such an interest in it as gives them the right to enjoin the city from removing the same, and thus entirely obstruct it from exercising the powers conferred upon it by law.

4, 5. The question of improving, repairing or repaving the streets of Atlanta is left to the discretion of its municipal legislature. It is a well-established rule of law that the courts will not interfere with the exercise of such discretion unless the power conferred is exceeded, or fraud is imputed and shown, or there is an arbitrary and unreasonable invasion of private rights. 1 Dill. Mun. Corp. § 94; *State* v. *Swearingen*, 12 *Ga.* 23; *Mayor of Athens* v. *Camak*, 75 *Ga.* 429; *Speer* v. *Athens*, 85 *Ga.* 49; *Regenstein* v. *Atlanta*, 98 *Ga.* 167. While the State is jealous of her sovereign right of legislation, and while a strict construction will be given any legislative power conferred by her upon one of her communities, yet it should not receive such a narrow interpretation as would result in defeating the very ends for which it was conferred. An incorporated city is a government within a government. It has it own executive, judicial, and legislative branches. It is a creature of the State, and can exercise no power that is not derived from its creator. Where legislative power is conferred upon it by the State, it is necessary that a degree of freedom should be allowed in its exercise; otherwise the city would be so hampered in the government of its people as would defeat the very ends of its incorporation. Hence it is that the State courts will never interfere with the free exercise of such rights as are left to the discretion of a corporate authority, unless such authority should go be-

yond the scope of power delegated, or unless the discretion given should be abused by an arbitrary exercise thereof, and by a plain and unwarranted violation of private rights.

It was contended by the petitioners in this case that the work of paving the portion of Washington street embraced in the ordinance was an entirely unnecessary and useless charge upon them as taxpayers and owners of property on said street, and that at much less cost the present macadamized pavement thereon could be repaired. Much evidence was introduced before the judge on the hearing of the application for injunction. There was not so much a conflict in the testimony as there was a difference of opinion on the part of the witnesses who testified on the hearing. There was sufficient evidence in behalf of the defendant to have sustained the court in refusing an injunction even upon a matter entirely within his discretion. The evidence did not sustain the theory that there had been an arbitrary and unreasonable, or a fraudulent exercise of power by the city authorities in this instance.

We therefore conclude that the court did right in refusing the injunction prayed for, and the judgment is accordingly

*Affirmed. All the Justices concurring.*