GEORGIA RAILWAY & POWER CO. *v.* CITY OF ATLANTA ·

The City of Atlanta filed a petition for mandamus, alleging generally that between stated points on a named street the pavement between the tracks and alongside of the tracks of the street railway operated by the defendant company was out of repair, and was out of repair on the date of certain resolutions passed by the mayor and general council of the city, requiring the defendant to repair that portion of the pavement. It was also alleged that under the law and a certain ordinance set forth the duty rested upon the defendant company to repair the portion of the street specified; and petitioner prayed for mandamus requiring the performance of this duty by the defendant. The defendant denied that the alleged duty rested upon it; and contended that the ordinance imposing the duty was illegal, unconstitutional and void; and further, that if the duty had ever rested upon it to make such repairs, it was exempt from that duty under certain contracts. *Held*:

1. The court, under the uncontroverted evidence submitted, properly directed the jury trying the case to return a verdict finding that the duty to repair rests upon the defendant company. This was true both at the date of the passage of the ordinance in question here and under the law as it then existed; and the right of the city under the law to require

the repairs as prayed in the petition for mandamus was not destroyed or impaired by the contracts pleaded by the defendant in defense of its resistance to the ordinance and the suit for mandamus.

2. The jury having returned the verdict as directed, the court properly made the mandamus absolute.

No. 2811. APRIL 14, 1922. REHEARING DENIED JULY 13, 1922.

Mandamus. Before Judge Pendleton. Fulton superior court. August 27, 1921.

The City of Atlanta brought a petition for mandamus against the Georgia Railway and Power Company, now the plaintiff in error. In this suit the city alleged: that the defendant was a street-railway corporation and as such operated a double-track street-car line on Lee Street; the pavement on Lee Street was out of repair, uneven, and dangerous to travel; the brick pavement was depressed; the bricks were worn out and in many places gone; holes appeared along the sides of the track and the bricks; the pavement was no longer smooth and even. It was further charged that this condition of the pavement was caused by the tracks and the running of the cars of the street-railway company and by the manner in which the railway was built and operated. With reference to these matters the petition alleged: (*a*) For at least one half of the distance betwen Park Street and McCall's Crossing on Lee Street the ties beneath the tracks are not properly supporting the tracks, and are insecure or rotten. (*b*) The foundation on which the tracks rest is not solid, and the ties supporting the rails vibrate, rendering the pavement uneven and unsafe for travel. (*c*) For at least one half the distance aforesaid the rails are out of alignment and do not hold the cars in line. (*d*) Cars which are too heavy are operated over said line, and the large number of cars operated thereon occasion vibration which causes displacement of the pavement. The petition alleged that a duty rested upon the railway company to repair and to "restore" the pavement and put it in smooth and even condition, because its present condition was due to the manner in which the street railway is built and operated.

In making these allegations the petition follows, in substance, a certain ordinance of the City of Atlanta, attached to the petition as an exhibit. The ordinance, like the petition, stated that the dangerous, uneven, and unsafe condition of the pavement was caused and produced by the way in which the street-railway com-

pany's line is built and the manner in which it is operated. The mayor instructed the chief of construction of the city to notify the street-railway company to repair the pavement and put it in safe, smooth and even condition; and that, upon the company's failure to comply, proceedings would be instituted to compel compliance. The petition alleged that the railway company had failed to repair and restore the pavement; and therefore the present suit was instituted. It prayed that mandamus issue, compelling the defendant company to repair and restore the pavement and put it in smooth and even condition.

The railway company admitted that it operated a double-track street-railway line on Lee Street between Park Street and McCall's Crossing. It denied all the allegations set out in the petition and the ordinance which constituted the basis of the present suit; and denied all allegations that the condition of the pavement on Lee Street was due to its acts. The answer alleged: that the tracks of the street-railway company on Lee Street were in fairly good condition; that the present condition of the pavement on the portion of Lee Street between Park Street and McCall's Crossing was not caused by or due to the manner in which the company's line was built and operated, or on account of the running of the street cars over said line; that some time previous to the present action of the city council (the purported ordinance in question) the entire paving on Lee Street, from curb to curb, and between Park Street and McCall's Crossing, had become worn out and was no longer useful or serviceable as a pavement; and that such condition (which existed over the entire street, including not only the portion between and adjacent to the tracks, but also the portion outside of and between the tracks and curbing) was caused by regular street and vehicular traffic, and because the paving itself, due to the length of time it had been laid and used, had become worn out. A short time previous to the bringing of the present suit Lee Street, between Park Street and McCall's Crossing, had been repaved by the public authorities; and the expense of such repaving was paid out of the general tax fund, and without assessment; the public authorities at that time neglecting and omitting to repave in the middle of Lee Street where the railway tracks were located, although this portion of the street was in need of repaving, in like manner as the portion repaved, and should have been repaved at

said time and in the manner as the other portion of the street had been repaved. The need of repaving the whole of Lee Street at that time was also shown by the fact that the public authorities repaved Lee Street on both sides of the street-car tracks, and immediately thereafter the city was undertaking to compel this defendant to pave the remaining portion of the street. The answer further says: That the present action is an attempt on the part of the City of Atlanta to compel the railway company, at its own expense, to repave a large section of Lee Street in a manner not authorized by law, and in a manner and way in which the city has no power or authority to compel the same, and to thus inflict double taxation on the street-railway company. That the method by which a street may be paved and a portion of the costs assessed against the street-railway company is provided by law, by an assessment plan, and such method has not been and is not now being followed by the City of Atlanta. That when a street is to be paved or repaved without assessment against the property owners, then it is the duty of the public authorities to pave or repave all portions of the street without assessment against the street-railway company and without placing upon it unjust and unequal burdens. The street-railway company is one of the largest contributors to the general tax fund of the county and of the city, and its money as a taxpayer should not be used to relieve others from assessment charges for paving, and then itself be compelled to pay for paving or repaving the other portions of the street left unpaved by the public authorities. That for the public authorities to repave a part of the street out of the general tax fund, to which the street railway is the largest contributor, and neglect and refuse to pave or repave the portion of the street between the tracks, and then compel the street-railway company to repave, at its own expense, the remaining portion of the street, is double taxation, and denying to the street-railway company the equal protection of the law, as guaranteed to it by the State and Federal constitutions; and is in violation of the constitution of the State of Georgia, as set out in section 6358 of the Civil Code, and in violation of the constitution of the United States, as set out in section 6700 of the Georgia Code. That, under the laws of the State of Georgia and the charter powers of the City of Atlanta, no duty rests on the street-railway company to repair the pavement on a street or to renew

old worn-out pavement; under the law and charter powers of the city, it has no power or authority to compel the railway company itself to do the work of repairing, paving, or repaving street pavements.

The answer further alleged, that in the year 1902 the City of Atlanta and the Georgia Railway and Electric Company entered into a contract which exempted the company from repairing any of the street to be improved, or from paving or repaving a street, except as, at said time, provided by law. By virtue of this contract the railway company bound itself to make the following payments to the city: (a) Within 30 days from the date of the contract (February 8, 1902) it was to pay into the treasury of the city the sum of $50,000, which amount was paid according to the terms of the contract. (b) On or before the first day of February of each year, starting with the first day of February, 1903, the Georgia Railway and Electric Company, its successors and assigns, bound itself to pay into the treasury of the city one per cent. of its gross receipts for three years, beginning in 1902, two per cent. of its gross receipts for twenty years thereafter, and beginning with the year 1905 and thereafter three per cent. of its gross receipts. In consideration of said payments and other matters set out and referred to in the contract, the City of Atlanta, among other things, agreed as follows: " The payment of percentage of gross receipts above provided for shall be in lieu of specific occupation, license, excise, special franchise taxes not included in ad valorem taxes or charges by the City of Atlanta, and in full of all money demands or charges whatever, except ad valorem taxes, paving charges as now provided by law, and bridge rentals; and whatever shall be at any time required, exacted, or enacted on any of said accounts, or any account other than ad valorem taxes, paving charges, and bridge rentals, shall operate to reduce to that extent the amounts due from the percentage above provided for." The provisions of this contract were made applicable to the Georgia Railway and Power Company by virtue of a contract entered into between the Georgia Railway and Power Company, the Georgia Railway and Electric Company, and the City of Atlanta, on March 11, 1912. By said contract of 1912 the number of feet to be charged for paving under the assessment plan was increased. The contract with reference to repairs of pavement was to remain as

fixed by the contract of 1902. The defendant contended that this contract relieved the Georgia Railway and Power Company and the Georgia Railway and Electric Company from making any repairs to pavement or paying for such repairs, the amount yearly paid to the City of Atlanta being in lieu of any costs for pavement repairs. The railway company has carried out said contracts since their execution, and is now carrying them out and yearly paying to the city the percentage of its gross receipts as provided for in said contracts.

At the conclusion of the hearing the court directed a verdict against the defendant, finding that the pavement between the points specified on the street named was out of repair, and that the duty rested upon the defendant company to repair the same by putting this portion of the pavement in a smooth and even condition and safe for travel,— that is, that portion of the pavement occupied by the tracks of the defendant and to the ends of the ties under the rails; and further granted mandamus absolute, requiring the defendant company to discharge the duty thus imposed. The defendant made a motion for a new trial, which was overruled, and the defendant excepted.

*Colquitt & Conyers*, for plaintiff in error.

*James L. Mayson* and *Jesse M. Wood*, contra.

BECK, P. J. (After stating the foregoing facts.)

1. Relative to the duty and obligation of the Georgia Railway and Power Company and its lessor to pave, repair, and maintain the portion of the street between its tracks and a certain distance on each side of its tracks, and the right of the City of Atlanta to enforce such obligation, are to be found certain statutes passed by the General Assembly, from which we take the following pertinent extracts: In an act amending the charter of the City of Atlanta, approved September 3, 1881 (Georgia Laws 1880-1, p. 358 et seq.), are to be found the following provisions: " Section 1. That the Mayor and General Council of the City of Atlanta shall have full power and authority, in their discretion, to grade, pave, macadamize, and otherwise improve, for travel and drainage, the streets and public lanes and alleys of said city, and to construct sidewalks and pave the same, to put down curbing, cross-drains, crossings, and otherwise improve the same. . . Section 3. . . " that any street-railroad company having tracks running through

the streets of said city shall be required to macadamize, or other-
wise pave, as the commissioners of streets and sewers may direct,
the width of its track, and for three feet on each side of every line
of track now in use, or that may hereafter be constructed by such
company; provided, that the law authorizing the assessment on the
abutting-property owners of the whole cost of paving sidewalks (in-
cluding cost of curbing) is in no way affected thereby." . The
power thus conferred upon the City of Atlanta to require street
railways to pave a part of the streets was enlarged by the act of
October 10, 1891, entitled an act to amend the charter of the City
of Atlanta, etc. (Georgia Laws, 1890-1, vol. 2, p. 457), in the
following particulars: Section 1. " That the charter of the City
of Atlanta and acts amendatory thereof be hereby amended so as
to provide that from and after the passage of this act, whenever any
street-railroad company lays a double track or line on any street
in said city, and such street shall at the same time or thereafter be
macadamized or otherwise paved, such street-railroad company
shall only be required to macadamize or otherwise pave between the
rails of each line of track and for four inches outside thereof, this
being equivalent to paving, as now and hereafter required by law
and charter of said city." Sec. 2. " That when the consent of said
city is given to the laying of street-railroad tracks in or on a street
which is unpaved and without pavement improvement, said city
may prescribe and require that the tracks shall be so laid and such
paving done between the tracks and for such space on each side
thereof as will preserve the use, comfort, and safety of such street
for the public." Certain other statutes relating to the subject un-
der consideration will also be quoted as we proceed with this
opinion.

So far as the statutory enactments deal with the question of the
duty of the railway company to maintain the portion of the street
between its tracks in a safe and proper condition, we must look to
the provisions of such statutes and make application of them in
view of all the facts in the case, including the contracts affecting
the rights and duties of the railway company. But in ascertaining
the full extent of the liability of the railway company in regard to
the matters here involved, where the statutes and the contracts do
not cover all phases of the question, we can take into consideration
the inherent and implied duties of the railway company which oc-

cupies with its tracks a portion of the streets of the city. In his work on Municipal Corporations Mr. Dillon says: "When a railroad company has the power, by general grant of authority, to construct its tracks across or along a street, it is under the implied obligation to restore the street or highway, as nearly as possible, to its former condition, and so to construct and maintain its tracks that by reasonable care and diligence no danger will be occasioned to the public in the use of the street or highway, due regard being had to the necessity, and the right under the legislative authority, of the rails being there." 3 Dill. Mun. Cor. § 1276. See, in this connection, also Maltby *v.* Chicago &c. Ry. Co., 52 Mich. 108 (17 N. W. 717) ; Railway Co. *v.* State, 87 Tenn. 746 (11 S. W. 946). In the case of Reading *v.* Traction Company, 215 Pa. 250 (64 Atl. 446, 7 Ann. Cas. 380), the Supreme Court of Pennsylvania held: " A street-railway company is bound to keep in repair those portions of streets occupied by its right of way, even in the absence of any express contract  or statutory direction to that effect." And again, in the opinion, it is said: "Before the adoption of our present constitution street-railway companies were authorized to occupy streets without municipal consent; now they can be authorized to do so only with such consent; but, no matter how authorized, the authority under which streets are occupied, unless expressly relieving such companies from the duty of keeping in repair those portions of the streets occupied by their tracks, carries with it a liability on their part to do so. When street-railway companies occupy portions of streets, such portions are no longer in the free, unencumbered, and exclusive use of the public, but to the companies is given not only a concurrent but a superior right to use them, and with this right goes a corresponding responsibility. As between a street-railway company and a municipality whose streets are occupied by such a company, the duty no longer rests upon the municipality of keeping in repair those portions of the streets used by the company, but devolves upon the company acquiring the right to use them for its corporate purposes." And in the notes to this decision it is said: " A municipal corporation may, by virtue of its general powers and its control over the streets, require a street-railway company to keep in repair the portion of the street embraced in its right of way, even in the absence of contractual stipulation, or statutory or charter provision to that effect. North Hud-

son County R. Co. *v.* Hoboken, 41 N. J. L. 71; Harrisburg *v.* Harrisburg Pass. R. Co., 1 Pearson (Pa.), 298; Memphis etc. R. Co. *v.* State, 87 Tenn. 746, 11 S. W. Rep. 946. See also Reading *v.* United Traction Co., 202 Pa. St. 571, 52 Atl. Rep. 106. It is the duty of the railway company, by reason of its occupancy of the street, to keep in repair the portion thereof occupied by its tracks, and the company is liable in damages for injuries caused by the nonrepair of that portion of the highway. Montgomery St. R. Co. *v.* Smith (Ala. 1905), 39 So. Rep. 757; Citizens St. R. Co. *v.* Marvil, 161 Ind. 506, 67 N. E. 921; McLaughlin *v.* Philadelphia Traction Co., 175 Pa. St. 565, 34 Atl. 863; Houston City St. Ry. Co. *v.* Medlenka, 17 Tex. Civ. App. 621, 43 S. W. 1028; Laredo Elec. etc. Co. *v.* Hamilton, 23 Tex. Civ. App. 480, 56 S. W. 998. In Laredo Elec. etc. Co. *v.* Hamilton, supra, the court approved the following proposition: ' The duty of a street-railway company to repair the streets which it occupies, or, more definitely, that portion of the streets upon which its tracks are laid, is a general one, requiring no legislative act or direct agreement to support it, and such a company is bound to use reasonable care and diligence to keep the space which it actually occupies in a safe condition for ordinary travel, failing in which it must answer for the consequences.' The space which it is the general duty of the railway company to keep in repair is that space between the tracks and outside the tracks as far as the ends of the cross-ties on which the tracks rest. Harrisburg *v.* Harrisburg Pass. R. Co., 1 Pearson (Pa.), 298; Laredo Elec. Co. *v.* Hamilton, 23 Tex. Civ. App. 480, 56 S. W. 998; Memphis etc. R. Co. *v.* State, 87 Tenn. 746, 11 S. W. 946."

What is here ruled as to the implied obligation of the street-railway company to maintain and keep in repair the portion of the street between its tracks finds support in other adjudicated cases and other text-books. See especially Elliott on Roads and Streets (3d ed.), §§ 985 et seq., and the authorities there cited. In the case of State ex rel. Jacksonville *v.* St. Ry. Co., 29 Fla. 590 (10 So. 590), the Supreme Court of Florida said: " The authority of a general nature to regulate and control the streets, usually granted to municipal bodies, is generally deemed sufficient to clothe the municipal body with the right to grant or refuse, or otherwise to regulate, the use of the streets for street railways operated by horse-

power.  The general powers conferred upon municipal bodies by the act of the legislature, chapter 1688, Laws of Florida, as amended by the act of 1887, c. 3024, to regulate and control the construction, grading, and repairs of streets, pavements, and sidewalks, invested such bodies with authority to impose by ordinance upon street railways operated by horses, thereafter to be constructed, the duty to keep the portions of the streets between the tracks of said railways and two feet on each side in as good repair and condition as the city keeps the balance of the street, and of even grade with the street." And we are of the opinion, after considering all of the authorities upon the subject and looking to the duties placed upon street-railway companies in regard to repaving the streets and keeping them in repair in the City of Atlanta, by legislative enactments conferring charter powers upon that municipality, that the municipality has the authority to compel the street railway to repair the portion of the street occupied by its tracks, when that part of the street becomes such as to render it unsafe for use by the public, where repairing it will restore the street to a proper condition.

In the act of 1881 set forth above it is provided that any street-railway company having tracks running through the streets of the city shall be required to macadamize, or otherwise pave, as the commissioners etc. may direct, the width of its track and for three feet on each side of every line now in use or which may hereafter be constructed by such company. This gives the city the authority to require the street-railway company to pave that portion of the street. And when we consider the inherent and implied obligations and duties of the railway company, discussed and defined in the authorities which we have quoted above, and the duty of the city to keep its streets in a reasonably safe condition, the authority given in the statute to compel the company to pave the street includes, when considered in connection with the implied duties of the railway company, the authority to compel the railway company to repave or to repair the portion of the street between its tracks when that becomes unsafe. *Burckhardt* v. *Atlanta*, 103 *Ga.* 302 (30 S. E. 32).

And now we must consider whether or not that power and authority arising from the legislative enactments and the essential and implied duties of the railway company have been modified

by subsequent statutes or by contract. The rights of the city and the duties of the railway company relatively to the requirement of the ordinance in question in this case, requiring the railway company to repair, are not changed or modified, so as to impair the authority of the city, by that part of the act of October 10, 1891, set forth above. Section 1 of that act prescribes the extent of the pavement which the street-railway company may be required to make when such company lays a double track or line on any street in the city, in case such street is then or thereafter macadamized or otherwise paved. Section 2 provides for the case of laying railway tracks on a street which is unpaved and without pavement improvement, and the power of the city to require the tracks to be laid in a certain manner. Section 3 authorizes the city to require contribution from the railway company in the cases there stated. But in none of the sections is the power of the city to compel repairs in any way diminished.

Section 1 of the act of 1892 (Georgia Laws 1892, p. 135) reads as follows: Section 1. "That the Mayor and General Council of the City of Atlanta are hereby authorized, upon the presentation of sufficient petition for the paving of any street or portion of street, to authorize its paving under the existing law, to pave or contract directly for the paving of the whole surface of the street or portion of the street indicated by such petition, and to require any street-railroad company having or using tracks in such street or portion of street to pay for the paving of the space therein which such company or companies may be required to pave under the existing law, the object of this amendment being to allow the city to pave or contract for the paving of the whole surface of the street, without giving the street-railroad company the option of having the space to be paved by it paved by itself or by a contractor at its instance; provided, that this section shall not apply to street-railroad companies where the paving required of such companies has been satisfactorily done in advance of the letting of the contracts for paving the whole surface of such streets." And counsel for plaintiff in error in their brief contend that this act last referred to changed the previous laws with reference to street paving, and provided that thereafter " all paving was to be constructed by the city, without giving the street-railway company the option of putting down the pavement itself, and that thereafter a portion of

the cost of the pavement should be taxed against the street-railway companies." We agree with this contention only to the extent that it provides that where the pavement was to be made in the manner and under the method there contemplated, the authority was given the city to pave or contract for the paving of the whole surface of the street " without giving the street-railroad company the option of paving or having the space to be paved by it paved by itself or by a contractor at its instance." It in nowise limited, modified, or diminished the right of the city to require pavement, as it then existed, but gave it additional authority in the case defined; and, moreover, it distinctly recognized that there is a certain space which the railway company could be required to pave " under the existing law." Again, in an act approved December 10, 1897, entitled an act to amend the charter of the City of Atlanta (Georgia Laws 1897, p. 145), it is provided in section 3 thereof that " Any street-railroad company or street-railway company having tracks running through any street or portion of street which is to be paved or repaved by said city under the assessment plan, provided for by this charter or the general law of the State, shall be required to pay the whole cost of paving, repairing, or otherwise improving eleven feet in width of said street or portion of street, whether such company has one or more lines of track therein; and in case any street-railway or street-railroad company shall construct one or more lines of track in any street or portion of street already paved, it shall likewise pay for the paving of eleven feet in width of the street or portion of the street occupied by its tracks, according to the then value of such pavement, to be judged of by the Mayor and General Council. The material to be used in paving or otherwise improving streets shall be such as the Mayor and General Council shall select in each case." This provision in the law amending the charter of Atlanta does not change or modify the general authority requiring the railway company to repave or repair, except in the case where the assessment plan is adopted; but it does not mean that the city may not require the railway company to repave or repair where no assessment plan was adopted. The adoption of the assessment plan is dependent upon the presentation of a petition. Suppose that the pavement of a portion of a street was completely out of repair, unfit for use, in such condition as to render it dangerous to those

traveling over it in vehicles or on foot; would be municipality, which is liable for injuries incurred in consequence of the unsafe condition of the street, be required to wait until such petition was made? There can be only one answer to this question. Nor do we mean to intimate that counsel for the plaintiff in error are making a contention contrary to this; but they do make the contention that this last act of 1897 provides when and prescribes the mode by which any charge for repairing a street pavement can be made or assessed against the street-railway company, that by such provisions and such charter powers the city can only charge the railway company for a part of the cost of repairing the street when the cost of paving, repaving, or otherwise improving the street is to be collected by the assessment plan, and that the city has no authority to proceed against the street-railway company in any other manner than that prescribed by the statute. To this contention we do not agree, as we have pointed out above. The last act cited prescribes how the street-railway company may be assessed and required to pay its part of the cost of the pavement under the assessment plan, but does not exempt it from the obligation to repair or repave when the pavement is not made under the assessment plan.

We will now pass to the consideration of the question as to whether the street-railway company is relieved of the duties and obligations imposed upon it by law in regard to repaving and repairing the portion of the street between its tracks, by contracts entered into between the city and the plaintiff in error or its lessors. The contracts relied upon by the plaintiff in error in defense of its resistance to the ordinance in question are set forth in the statement of facts. It appears that in the year 1902 the City of Atlanta and the Georgia Railway and Electric Company entered into a contract, by virtue of which the railway company bound itself to pay into the city treasury within thirty days from the date of the contract the sum of $50,000, which amount was paid according to the terms of the contract, and also to pay into the city treasury a certain percentage of its gross receipts; and in consideration of said payments and other matters set out and referred to in the contract the city, among other things, agreed that the payment of the percentage of gross receipts provided for should be in lieu of certain taxes, demands, and charges enumerated

in a clause of the contract specifically enumerating the exemptions; to which the city agreed. Conceding that the provisions of this contract are made applicable to the Georgia Railway and Power Company, the plaintiff in error, by virtue of a contract entered into between that company and the company contracting with the city, we must consider whether it has the effect of relieving the plaintiff in error of the duty to repair, as required by the ordinance in question in this case, under the laws existing at the time of the passage of the ordinance. That part of the contract now immediately under consideration reads as follows: "The payment of percentage of gross receipts above provided for shall be in lieu of specific, occupation, license, excise, special franchise taxes not included in ad valorem taxes or charges by the City of Atlanta, and in full of all money demands or charges whatever, except ad valorem taxes, paving charges as now provided by law, and bridge rentals; and whatever shall be at any time required, exacted or enacted on any of said accounts, or any account other than ad valorem taxes, paving charges, and bridge rentals, shall operate to reduce to that extent the amounts due from the percentage above provided for." After a careful consideration of this clause of the contract we are of the opinion that it does not exempt the railway company from its obligation and duty to repair or repave and keep in proper condition the portion of the street between its tracks, as existed prior to the signing of the contract. The payment of the percentage of the gross receipts provided for in this contract was to be in lieu of "specific, occupation, license, excise, special franchise taxes not included in ad valorem taxes or charges by the City of Atlanta, and in full of all money demands or charges whatever, except ad valorem taxes, paving charges as now provided by law, and bridge rentals." It will be seen by the language of this part of the clause under consideration that "paving charges as now provided by law" are excepted from the exemptions contracted for. Conceding that the word "paving" does not include "repaving," when used in the connection where the expression here occurs, we do not think that the expression, "in full of all money demands or charges whatever" (omitting the exception), abridges or affects the right of the city to enforce the performance by the railway company of its inherent or implied obligation to repair the portion of the street upon

which its tracks are laid. The enforcement of this obligation is not a money demand or charge. The fact that the city might in certain cases make these repairs or improvements and make charges against the railway company for them, and thereby bring its demand within this excepting clause, does not have the effect of divesting the city of its authority to compel the repaving or repairing under existing laws. And if this is a correct construction of this clause of the contract, then the remaining portion of the clause just quoted did not divest the city of its authority to compel the repairing of that portion of the street referred to in the ordinance.

On March 18, 1912, the City of Atlanta passed an ordinance, which was agreed to by the Georgia Railway and Power Company and the Georgia Railway and Electric Company on April 20, 1912. Treating this ordinance and any agreement thereto as a contract between the parties, we will consider whether it affected the obligations of the last-mentioned company to comply with the requirements of the ordinance in question and which is sought to be enforced by the mandamus proceedings. By section 1 (a) the contracting parties stipulated that the percentage payments of the gross receipts, as provided in the contract of 1902, were to continue, with the added stipulation that the Georgia Railway and Power Company should pay the percentage of gross receipts on all business done by it within the radius of seven miles from the center of the City of Atlanta, and that a like percentage of gross receipts should be maintained and preserved on all extensions on all lines made by the railway company within such radius. By section 1 (e) it was provided that the electric company and the power company, whenever paving was to be done by the city on any street upon which there were double tracks, should pay for 16 feet of such paving or repaving, and for 11 feet where there were single tracks. And this section, 1 (e), further provided that "with reference to repairs, the present law shall be continued, and the provisions of this section shall be enforceable only with reference to pavements upon streets where there is an assessment therefor." The assessments to bear a specified proportion to the entire cost of the paving. If we have construed the contract of 1902 correctly, then this contract or ordinance did not affect or impair the right of the city to compel the street-railway company

to repair the portion of the street upon which its tracks are laid. With reference to repairs, that contract provides expressly that the present laws shall continue, and makes the provisions of the section last referred to applicable upon streets where pavements are made on the assessment plan. But it is pointed out above that the assessment plan is not the only method by which paving or repaving can be done.

Under the uncontroverted facts in the case, the repairing or repaving of the portion of the street in question was necessary to render it safe and practicable for use by the public. And that being true, under the law as we have construed it in the light of the statutes quoted or cited, and the law imposing certain implied duties and obligations upon the railway company, and under the contracts between the street-railway company and the municipality, the duty and obligation rested on the street-railway company to repair or repave the portion of the street in question. And further, where that duty or obligation is established, the city may by mandamus compel its performance. This doctrine has been stated by text-writers and ruled in courts of various jurisdictions. Elliott on Roads and Streets (3d ed.), § 986, and cases there cited. It follows from what we have said that the court did not err, under the uncontroverted evidence in the case, in directing the verdict excepted to and making the mandamus absolute.

*Judgment affirmed. All the Justices concur, except Atkinson and Hill, JJ., disqualified.*

### ON MOTION FOR REHEARING.

In the motion for a rehearing in this case, filed by the plaintiff in error, it is insisted that all of section 3 of the act of September 3, 1881, except the part quoted in the opinion, the same being an act to amend the charter of the City of Atlanta (Acts 1881, p. 359), must have been overlooked by the court. That section reads as follows: "That said Mayor and General Council shall also have full power and authority to assess one third of the cost of grading, paving, macadamizing, constructing side-drains, cross-drains, crossings, and otherwise improving the roadway or street proper, on the real estate abutting on each side of the street improved; Provided, that before any street, or portion of a street, shall be so improved, the persons owning real estate, which has

at least one third of the fronting on the street, or portion of a street, the improvement of which is desired, shall, in writing, request the Commissioners of Streets of [and] Sewers to make such improvements, and said commissioners shall have approved the same, and shall foward the same, with their approval, to the Mayor and General Council, with a statement of the character of the improvement proposed to be made, and an estimate of the cost of the same, and said Mayor and General Council shall by ordinance direct the said work to be done; and *provided further,* that any street-railroad company having tracks running through the streets of said city shall be required to macadamize, or otherwise pave, as the Commissioners of Streets and Sewers may direct, the width of its track, and for three feet on each side of every line of track now in use, or that may hereafter be constructed by such company; *provided,* that the law authorizing the assessment on the abutting-property owners of the whole cost of paving sidewalks (including cost of curbing) is in no way affected thereby." Plaintiff in error contends that the provision of that section which follows the words " and provided further," beginning in the 16th line of the section, is a mere proviso in the strict sense of that word, and should not be considered as a grant of power, but that if it is a grant of power at all, it was merely annexed as a condition of the grant contained in the preceding portion of the section; and insists that, this being a mere proviso, it should be given effect only as such; quoting the language of Justice Story in the case of Minis *v.* U. S., 15 Peters, 445, which reads as follows: " The office of a proviso is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it as extending to cases not intended by the legislature to be brought within its purview."

Tested by this and other similar definitions of a proviso, we are of the opinion that the clause in the section containing the words referred to is, strictly speaking, not a proviso. It does not except anything from the enacting clause; nor does it qualify or restrict its generality; nor does it exclude any possible ground of misinterpretation of it. It is absolute and general in its character. It declares in general terms that " any street-railroad company having tracks running through the streets of said city

shall be required to macadamize, or otherwise pave," etc. There are two other clauses in section 3 which begin with the word "provided;" one of them precedes, the other follows the particular clause in section 3 under consideration. These last two clauses referred to are provisos, strictly, — not made so by the fact that each of them begins with the word "provided," but by the language employed; the first of them reading "provided, that before any street or portion of a street shall be *so* improved;" and this is followed in the same proviso with a statement limiting and defining certain steps that must be taken before an assessment can be imposed; and the last proviso is also clearly and strictly such, tending to exclude some possible ground of misinterpretation of the section. But that part of the section following the words "and provided further," contains no language, except the word "provided," to show that it is a mere proviso in the strict sense of that word; and that word "provided," preceding the general and absolute language employed, may well be construed as equivalent to the phrase, "it is enacted." "The question whether a proviso in the whole or in part relates to and qualifies, restrains, or operates upon the immediately preceding provision only of the statute, or whether it must be taken to extend in the whole or in part to all the preceding matters contained in the statute, must depend, I think, upon its words and import, and not upon the division into sections that may be made for convenience of reference in the printed copies of the statute. Remembering the slight importance that is to be attached to the mere arbitrary divisions of statutes by the legislature itself, this rule, it seems, must still, with proper limits and caution as to the application of it, be deemed a reasonable one." Endlich on Interpretation of Statutes, 258. In the case of Georgia Railroad &c. Co. *v.* Smith, 128 U. S. 174, 181 (9 Sup. Ct. 47, 32 L. Ed. 377), it is said: "The difficulty attending the construction of the clause following this one arises from the doubt attached to the meaning of the term 'provided.' The general purpose of a proviso, as is well known, is to except the clause covered by it from the general provisions of a statute in some particular. But it is often used in other senses. It is common practice in legislative proceedings, on the consideration of bills, for parties desirous of securing amendments to them, to precede their proposed amendments with the term 'provided,' so

as to declare that, notwithstanding existing provisions, the one thus expressed is to prevail, thus having no greater signification than would be attached to the conjunction 'but' or 'and' in the same place, and simply serving to separate or distinguish the different paragraphs or sentences. Several illustrations are given by counsel of the use of the term in this sense, showing, in such cases, where an amendment has been made, though the provision following often has no relation to what precedes it." Authorities might be multiplied authorizing this construction and showing that in making a proper construction of the language employed we are not bound nor restricted by a definition of the word " proviso." But if this were not true — if this is strictly a proviso, and does not contain the legislative grant of power which the language seems to confer, nevertheless we would still be of the opinion that the judgment of the court below should be affirmed. We do not think that the fact that the part of the street on which the tracks are laid has become so entirely useless and completely in disrepair as will render repavement necessary to meet the requirement that the street shall be repaired exempts the company from making the repairs ordered. Is the contention a sound one, that a street-railroad company, though bound to make repairs and to keep the part of the street on which its tracks are laid in good condition, could neglect making repairs until that part of the street was utterly unfit for use in its entirety, and then for that reason could not be forced to repair, because repairing meant making it over, or repaving? If that were true, then a street-railroad company, by persisting in neglect to make repairs which it should make under the law, could carry its neglect to such an extent that it would gain exemption by the fact of continued neglect. To lay down such a proposition would be practically equivalent to holding that it would not be liable in case of gross continued neglect, but would be liable in case of less neglect. That a street-railway company is bound to perform the duty required of it by the ordinance in question here is in effect the meaning of numerous decisions cited in the opinion; and other decisions might be added, some from the same States as those from which the citations have been made, and others from other States. See 36 Cyc. 1403, relating to the duty to repair, etc., and the cases there cited. See also 2 Elliott on Roads and Streets (2d ed.), §§ 985 et seq.

In making the quotations from the cases decided by the Pennsylvania court we do not mean, of course, to adopt the entire doctrine of the Pennsylvania court on the subject of the special rights of street railways in streets where their tracks are laid, nor even in part adopt the doctrine that the construction of a street railway in a street imposes an additional servitude. The quotation was made because of the general language employed in the decisions and the general doctrine there stated that can be predicated upon other reasons. There are some courts that may take a different view as to the correct rule under the facts of this case; but we have made extensive search, and are of the opinion that the weight of authorities is with this court in the decision rendered. Some writers seem to think that the question is in doubt; but even if that were true, the doubt is to be resolved in favor of the public.     *Motion for rehearing denied.*