No. 48.—The Union Branch Rail Road Co., plaintiffs in error *vs.* The East Tennessee & Georgia R. R. Company, defendants in error.

[1.] A plea which sets forth the character and terms of an Act of the Legislature granting a franchise, and material to the defendants' case, which act is alluded to in the bill only as "A pretended legislative grant" performs the proper office of a plea, by bringing forward matter not distinctly appearing in the bill, and which displaces the equity.

[2.] Advantage cannot be taken of non-user, or mis-user of an act of incorporation, in any collateral action.

[3.] Upon trial of the question as to the right of way in the East Tennessee and Georgia Rail Road Company over the route upon which they have constructed their road in Georgia, as against the claim of the Union Branch Rail Road to the same : *Held*, that the former company takes no legal aid from the resolutions of our Legislature passed in the year 1837, offering to secure similar privileges to those enjoyed by the Western and Atlantic Rail Road in our State, to any road in the State of Tennessee seeking to connect therewith : *provided*, that the latter State would grant the privilege of extending that road to the Tennessee River.

[4.] In the year 1840, the Legislature of Georgia incorporated the Cross Plains and Red Clay Rail Road, reserving the right to repeal the act of incorporation.    In 1847, an act was passed granting the right of way over the same

route to others. In 1849, the Legislature by act, recognized the privileges granted to said company by the act of 1840, changed the name to Union Branch Rail Road, and repealed the clause in the act of 1840, reserving the right to repeal that act: *Held,* that the act of 1849 could not effect the rights which had been acquired under the act of 1847; because that act repealed the act of 1840, so far as the right of way was concerned.

[5.] The act of 1847, to which reference is made repeals the act of 1840, because the Legislature reserved the right to repeal that act, and because the act of 1847 is directly repugnant to the act of 1840, as to this grant of the right of way.

[6.] The act of 1840, provides that in the event of its repeal, the appointment of persons who shall " fix the value" of the work, investments, and improvements of the company may be made either by the repealing act, or by the Governor, and the Stockholders.

[7.] An act of incorporation, in which the Legislature have reserved the right of repeal, may be repealed by implication, upon the principle, that every affirmative statute is a repeal by implication of a precedent affirmative statute, so far as it is contrary thereto.

[8.] The prohibition in the 10th section of the 1st article of the Constitution of the U. S. to the effect, that " no State, without the consent of Congress shall enter into any agreement or compact with another State, or with a foreign power," is political in its character, and has no reference to a mere matter of contract, or to the grant of a franchise, which in no wise conflicts with the powers delegated to the General Government by the States.

[9.] A corporation can have no legal existence out of the sovereignty by which it is created; but its existence, as a person capable of contracting may be recognized in another State, and as such, it may there be contracted with.

In Equity from Murray Superior Court.    Decided by Judge JOHN H. LUMPKIN, April Term, 1853.

The following is the Bill of Exceptions which sets forth the facts in this case.    The assignment of error as to the decision of the Court in sustaining the plea, and dismissing the bill, only was relied on before this Court.

GEORGIA, WHITFIELD COUNTY.

Be it remembered, that on the fifteenth day of April, in the year of our Lord, 1853, during the regular Term of the Superior Court of said County, His Honor John H. Lumpkin, one of the Judges of the Superior Court of said State presiding,

the cause of the Union Branch Rail Road, complainant, *vs.* the East Tennessee & Georgia Rail Road Company, Thomas H. Calloway, William Grant, Simeon D. Reynolds and Jonathan N. Cate, defendants, then and there pending on the equity side of said Court, being a bill for discovery, relief and injunction, came on to be heard ; on a motion for an injunction, the appointment of a receiver and a plea in bar to the complainant's bill of complaint ; in which bill of complaint, it is amongst other things, alleged that the Legislature of Georgia, at its session, in the year of our Lord, 1840, incorporated the complainant by the name and style of the Cross Plains and Red Clay Branch Rail Road Company of Georgia, for the purpose of completing fifteen miles of Rail Road within the limits of Georgia, commencing at a place then known by the name of, and called Cross Plains, but now known as the Town, or the City of Dalton, and extending thence to and terminating on the line of the State of Tennessee, at a place called Red Clay. The said Bill of complaint further alleged the rights of the said complainant under the Charter, that it was a contract irrevocable and unalterable, save at the option of both parties, except so far as the power of modification or revocation was reserved in the act of incorporation ; and that in the act of incorporation it was enacted and stipulated that no other Rail Road should thereafter be built within twenty miles of the route, the complainant might select, complainant was allowed ten years to complete the said Road from the time of its incorporation ; and it was required to commence active operations on said Road in good faith in twelve months : and if it did not, its charter was to be forfeited to all intents and purposes ; which it avers it had done, and which it found necessary, for reasons which are stated in the record (to which Plaintiff in error begs leave to refer if necessary, as a part of this bill of exceptions) temporarily to suspend its operations ; that the General Assembly of Georgia, by an act approved the 5th day of December, 1849, changed the name of complainant, and while the said last act continued, all the privileges and liabilities of the said complainant under the original charter, it allowed it three years from

the passage of the last named act to complete the said Road, and repealed the 10th section of the original act of incorporation which reserved the right to any (then) future Legislature, to repeal said act of incorporation, and declared forfeiture of the charter, if complainant should sell its charter to any other company; or if it should not commence, in good faith, active operations on said road within twelve months after the passage of said act. The said bill proceeds to set forth its operations since the passing of the last named act, and amongst other things, alleges that complainant would have completed said road, within the time given it, had it not been prevented by the usurpation of the Rail Road route it had selected, and the appropriation thereof to its own use, by the East Tennessee & Georgia Rail Road Company. The Bill alleges that the last named company was first incorporated by the Legislature of Tennessee in 1835, for the purpose of building a Rail Road from Knoxville, in East Tennessee, to a point on the Southern boundary of Tennessee; that said Company was to commence the said Rail Road, or contract for the construction of some part of it, on or before the 1st day of January, in the year 1838, and complete the same on or before the 1st day of January, 1844; and on failure to do so, the interest of said Company, in said Rail Road, was to be forfeited and cease. The said bill alleges further, amongst other things, that the time for completing said Road was extended by the Legislature of Tennessee, from time to time, until it was finally fixed at the year 1860; that in 1849 the Legislature of Tennessee changed the name of the complainant from its original name, "The Hiwassee Rail Road Company," to the name of the "East Tennessee & Georgia Rail Road Company"; giving it all the powers and privileges it possessed under its former name; that the said East Tennessee & Georgia Rail Road Company, afterwards, under a pretended Legislative grant from the State of Georgia, entered upon, and seized the Rail Road route selected by complainant, and appropriated the same to its own use, without the consent of complainant, contrary to law, and in defiance of the superior claim and vested rights of complainant, and maintained forci-

ble possession against complainant.    The bill further alleges, the giving of notice by the complainant to the defendants, not to proceed with their work on said Road, and that complainant claimed it as its own property.    It further alleges that complainant proposed to pay the defendants for all outlays on said Road, and pay all losses &c., if it would deliver over the same to complainant, which the defendants refused to do; that at an early day in the progress of said work by the East Tennessee & Georgia Rail Road Company, the complainant undertook and commenced the construction of said Road, on its own selected and surveyed route, and was forcibly prevented from doing so by the defendants, their agents, servants and hirelings, for the reasons specified in said bill of complaint; and the East Tennessee & Georgia Rail Road company seized and appropriated to the use of said company, the said Rail Road route without compensation, and against the will of complainant, its lands and right of way.    The complainant insists in its said bill of complaint in substance, that inasmuch as the defendants constructed said Road, made improvements, and erected fixtures thereon, with a full notice of complainant's right, the title thereto was vested in complainant.

To the allegations of said bill, the defendants pleaded in bar the Act of the General Assembly of the State of Tennessee, passed in 1836, incorporating the Hiwassee Rail Road company, setting forth in said plea a portion of the powers and privileges conferred on the Hiwassee Rail Road company by said act of incorporation.    The said defendants further pleaded the act of the General Assembly of the State of Tennessee, passed on the 24th day of January, 1838, entitled an act to authorize the State of Georgia to extend her Western & Atlantic Rail Road from the Georgia line, to some point on the Eastern margin of Tennessee river; by which act, it was amongst other things enacted, that the State of Georgia shall be allowed to make every necessary reconnoissance and survey, for the purpose of ascertaining the most eligible route for the extension of her Western & Atlantic Rail Road from the Georgia line to the Eastern margin of the Tennessee river, and further enacted

that as soon as said route and point shall be ascertained, the State of Georgia shall be allowed the right of way for the extension and construction of her said Rail Road from the Georgia line to the Tennessee river, and that she shall be entitled to all privileges, rights and immunities (except the subscription on the part of Tennessee) and be subject to the same restrictions as far as they are applicable, as are granted, made and prescribed for the benefit, government and direction of the Hiwassee Rail Road Company; and it was further enacted that the foregoing rights and privileges are conferred on the State of Georgia, on condition that whenever application is made, she will grant and concede similar ones, and to as great extent to the State of Tennessee, or her incorporated companies.   And the said defendants further pleaded the Act of the General Assembly of the State of Georgia, passed on the 23d day of December, in the year 1847, to authorize the Hiwassee Rail Road Company of the State of Tennessee to extend their Rail Road from the Tennessee line to some point on the Western & Atlantic Rail Road of the State of Georgia, by which it was, amongst other things, enacted that the Hiwassee Rail Road Company of the State of Tennessee shall be allowed the privilege of making every necessary reconnoissance and survey for the purpose of ascertaining the most eligible route for the extension of the Hiwassee Rail Road from the Tennessee line to some point on the Western & Atlantic Rail Road above Dalton.

And it was by the same statute further enacted, that as soon as said route shall be ascertained, the said Hiwassee Rail Road Company shall be allowed the right of way over said route, to said point on the Western & Atlantic Rail Road, and shall be entitled to all the rights, privileges, and immunities, and be subject to the same restrictions as granted to the Western & Atlantic Rail Road of the State of Georgia, in the State of Tennessee, by an act of the State of Tennessee, passed on the 24th of January, 1838, entitled an act to authorize the State of Georgia to extend her Western & Atlantic Rail Road from the Georgia line to some point on the Eastern Margin of the Tennessee river.   The defendants further plead in substance,

that the Legislature of the State of Tennessee passed on the 4th of February, 1848, an act changing the name of the Hiwassee Rail Road Company to that of the East Tennessee & Georgia Rail Road Company, and conferred on it under its new name, all the powers, privileges, &c., it had and possessed under its old name, and authorized and empowered it, with the consent and authority of the Legislature of Georgia to penetrate the State of Georgia with their road so as to connect the same.    The defendants deny in their said plea that they or persons employed by them, have done any manner of thing or act that they were or were not authorized to do by the aforesaid several statutes above pleaded, and recited in or about the survey, locations, constructions or use of said road, and insist that all they have done, they have a right to do under and by virtue of the said acts and statutes; and they further deny that the complainant has a right to hold lands or real estate.    And on the hearing of said cause in manner aforesaid, and upon the points aforesaid, the said Court decided, ordered and adjudged, that upon the hearing of argument on the bill and plea and motion for an injunction, and the appointment of receiver, it was ordered by the Court that the motion for an injunction, and the appointment of receiver be refused; that the plea be sustained, and the bill be dismissed; to which decision of the Court, the counsel for the complainant excepted.    And the counsel for the complainant, on this 8th day of May, in the year aforesaid, being within thirty days from the adjournment of the said term of said Court, tenders his bill of exceptions and says:

1st.  That the Court erred in refusing to grant said injunction.

2d.  That the Court erred in refusing to appoint a receiver in said cause.

3d.  That the Court erred in sustaining said plea, as a plea in bar of the complainant's rights of recovery.

4th.  That the Court erred in dismissing the said bill of complaint.

McDONALD & BURCH for plaintiff in error.

LAW, W. H. UNDERWOOD & J. W. H. UNDERWOOD for defendants.

*By the Court.*—STARNES, J., delivering the opinion.

The question in this case is alone upon the sufficiency of the plea. The other assignments of error were abandoned in the argument before us.

[1.] It is insisted first, that this plea is not good, as it brings forward no new matter; and that advantage might have been taken of what is set forth in it, upon demurrer.

It is true, that the proper office of a plea in Chancery, is to bring forward some fact not distinctly appearing in the bill, which displaces the equity.

Trying this plea, by this rule of Chancery practice, we sustain it; for we find it bringing forward the fact of the grant of franchise to the Hiwassee Rail Road Company, by the Legislature of Georgia, in the year 1847; which fact is alluded to in the bill, only as " A pretended Legislative grant, from the State of Georgia." Neither the character of that grant, nor its terms are stated in the bill; and the plea, therefore, in clearly and distinctly setting forth these things, brings forward new matter within the reason of the rule stated.

[2.] Another objection to the plea, is that it contains no denial of the allegation in the bill, to the effect, that the said Rail Road Company suspended its work with the intention of abandoning it, at one period after its charter; that this, consequently, must be taken as true, and that charter be regarded as having been forfeited.

This objection cannot prevail: 1. Because, in the same connection, the bill alleges that a few days before the charter was to become void, by reason of this suspension, the Legislature of Tennessee extended the time for the construction of the road. 2. Because advantage cannot be taken of non-user or mis-user of an Act of Incorporation, in this collatteral way, according to the view which this Court entertains on this subject. (*Young vs. Harrison,* 6 *Ga. Rep.* 130.)

Finding the defendants thus rightly in Court with the plea, let us inquire into the question which it raises.

The complainant insists upon its right of way over the premises in question, by virtue of the Act of our General Assembly, passed in the year 1840, granting corporate privileges to the Cross Plains & Red Clay Rail Road; together with the Act of 1849, changing the title of this Company to its present name, recognizing its original privileges, repealing the 9th and 10th sections of the Act of 1840, which gave to the Legislature the right to repeal the charter on terms, and allowing three years in which to complete the road. (*Acts of* 1840, *Pamp.* 87. *Of* 1849, *Pamp.* 241.)

The defendants, in their plea, rely on the Act of 1847, granting to the Hiwassee Rail Road Company the right of way over the premises, together with certain Resolutions of the General Assembly of 1837, offering to secure similar privileges to those enjoyed by the Western & Atlantic Rail Road, in our State, to any road in the State of Tennessee, seeking to connect with the same; *provided*, that the latter State would grant the privilege of extending that road to the Tennessee river.

[3.] It is the opinion of this Court, that the defendants take no legal aid from the Resolutions of 1837. We are not prepared to hold, that after the Legislature passed these Resolulutions, the State was forever prohibited from granting to its own citizens the exclusive right of way over the territory which lay between the Western & Atlantic Rail Road and the Tennessee line; and that the sole right of constructing and working Rail Roads, in this portion of our State, was thereafter reserved to citizens of Tennessee, seeking to connect with our road. This we must hold, if we give to these Resolutions of 1837, the effect claimed for them.

[4.] Neither do we agree with the complainant, that the Act of 1849, cited, has any influence in the consideration of this subject, or in any manner affects the rights of the defendants; because, we believe that the Act of 1847 repealed the Act of 1840, so far as the grant of the exclusive right of way to the

complainant was concerned; and a consideration of these two latter Acts must determine the matters in issue between the parties.

[5.] We hold, that the Act of 1847 repeals the Act of 1840, for the following reasons:

1. In Section 10 of the Act of 1840, incorporating the Cross Plains & Red Clay Rail Road, (now the complainant) the Legislature reserved to itself the right to repeal that Act of Incorporation, on certain terms, viz: that the Stockholders should be paid for their work, investments, and *improvements,* if it were repealed.

2. That Act of 1847, in granting to the Hiwassee Rail Road Company the right of way over the same premises, was directly repugnant to the Act of 1840; and as a consequence, by well known and settled rules, repealed the Act of 1840, or so much of it, as secured to complainant the exclusive right of way over these premises. By virtue of the Act of 1840, the complainant, perhaps, may still construct a road, "From the City of Dalton, and extending thence, and terminating on the line of the State of Tennessee, at a place called Red Clay;" for the Act of 1847 secures to the Hiwassee Rail Road Company the right of way only over the route of said company, "With such rights, privileges, and immunities" as are granted to the Western & Atlantic Rail Road, in the State of Tennessee, by an Act of said State, passed on the 24th day of January, 1838. (*Acts of* 1847, *Pamp.* 171.)

This grant of privileges, &c., by the Act of Tennessee, passed on the 24th of January, 1838, is that which, by said State, had been previously "Granted, made and prescribed for the benefit, government and direction of the Hiwassee Rail Road Company. (*Acts of Tenn.* 1838.)

On looking to the charter of this Company, and to the Legislation of Tennessee concerning it, we find no grant to that Company of any exclusive right of way, except for a space of two hundred feet, through which their track shall pass, "From Knoxville, East Tennessee, through the Hiwassee District, to a point on the Southern boundary of Tennessee." (*Sec.* 13

*of Act of Incorporation.*) And the 27th Section of this Act. expressly provides, that full privilege is reserved to any corporation of the State, afterwards to connect with the road, upon condition that no injury shall be done to the works of the Hiwassee Rail Road and that there shall be no interference with the privileges granted them.

It thus appears that the Hiwassee Rail Road Company, now called the East Tennessee & Georgia Rail Road Company, have, by virtue of the Act of 1847, the right of way over a track of two hundred feet (with the other privileges granted by the Tennessee Act) from the terminus of their road, at the Tennessee line, to the point which they have selected on the Western & Atlantic Rail Road, at or near Dalton ; and that this Act necessarily repeals the Act of 1840, *pro tanto.*

To this view of the subject, it has been objected : 1. That there was no provision made by the Act of 1847, for compliance with the terms on which only, the Act of 1840 could be repealed ; and there has been no such compliance. 2. That there is no direct provision in the Act of 1847, for the repeal of the Act of 1840 ; and that an Act of the Legislature, granting a charter to corporators, and contracting with them as such, cannot be repealed by implication. 3. That the Act of 1847 is unconstitutional. 4. That the Legislature had no authority to make this grant to a foreign corporation.

[6.] Our view of the first objection is, that the Act of 1840 did provide that just compensation should be made to the complainant, " For their work, investments and improvements," in the event that it should be repealed ; but did not provide that this should be done, only in one way, viz : by the appointment of assessors, by the repealing Act, who should, together with an equal number appointed by the Stockholders, value the property, assess the damage, &c. The Act also provided, that such assessors might be appointed by the Governor of our State, and the Stockholders of the road. The words are as follow : " If any future General Assembly deem it advisable, they may repeal this Act ; and if it be repealed, the Stockholders shall be paid for their work, investments and

improvements, at a fair valuation, to be made by an equal number of disinterested persons appointed on the part of the State in said repealing Act, or by the Governor and the said Stockholders."

It follows, that if the complainant, or the Stockholders of the company, have put "work, investments and improvements" upon their road, of whose value they have been deprived by the repealing Act of 1847, they have their claim for the same upon the State; and as Stockholders, may call on the Governor, with them to have "a fair valuation" fixed for their work, investments, &c.; and they will have the right to demand payment of the same.

[7.] The next objection raises the inquiry, whether or not there is any difference in the Legislative proceeding, by which an Act of Incorporation (in which the Legislature have reserved the right of repeal,) is repealed, and that by which any other Act is repealed.

It was urged that contracts may be made, and rights may vest under such an Act, and in reliance upon it. This is so; but is just as true of any other Act whatever. And he who contracts or invests under such an Act, surely does it with notice, and with a full sense of the risk he takes.

What difference then, is there on principle, between the repeal of such an Act, and any other securing important rights and privileges to the citizen, and which may be repealed?— And why any difference in form, on greater solemnities in repealing such an Act?

We find no such distinction anywhere drawn. The Common Law doctrine is, that "Every affirmative Statute is a repeal by implication, of a precedent affirmative Statute, so far as it is contrary thereto, for *leges posteriores priores contrarias abrogant.* (*Dwarr. on Stat.* 673.)

In view of this Common Law principle, we cannot recognise the distinction taken.

[8.] It is also objected, that the Act of 1847, being a compact between two States is void, because contrary to the 10th Section of the 1st Art. of the Constitution of the U. S.,

which declares, that " No State, without the consent of Congress, shall lay any duty of tonnage ; keep troops or ships of war, in time of peace ; enter into any agreement or compact with another State, or with a foreign power ; or engage in a war, unless actually invaded," &c.

This objection is not well taken :

1. Because, in our opinion, this prohibition applies only to such an " agreement or compact" as is in its nature political ; or more properly, perhaps, such as may, in any wise, conflict with the powers which the States, by the adoption of the Federal Constitution, have delegated to the General Government. This first appears from the context.   We find the prohibition, as to entering into an agreement or compact, associated with others, preceding and following it, in the same sentence, and which undoubtedly contemplate political acts, or exercise of sovereign powers, with which the States, by the adoption of the great Federal Compact, have parted ; such acts as laying duties on tonnage ; keeping a standing army or navy ; making war, &c. ; and, in the language of Judge Story, when commenting on other words in this very clause, we may properly argue, that the sense of each of these terms, " Is best known by its association, (*noscitur a sociis*) to apply to treaties of a political character."

In the next place, this appears from the reason and spirit of the prohibition.

The framers of the Constitution clearly intended nothing more by this clause, than to prohibit the several States from exercising their authority in any way which might limit, or infringe upon a full and complete execution by the General Government, of the powers intended to be delegated by the Federal Constitution ; because nothing more was to be gained by any further prohibition, no further benefit to the General Government could have been derived from it, and it would have been entirely superfluous and unnecessary.

It was very proper and expedient, that no State should have been allowed to enter into any compact with another State or Foreign Government, which, by involving the exercise of pow-

ers parted with by the States, and belonging to the Federal Government, might operate seriously to embarrass that Government. But it could work no injury to the General Government, for such State to make an agreement with another State, or even a foreign power, which in no wise conflicted with the authority delegated to the General Government, and tended in no manner to embarrass that Government, in the full and complete exercise of its powers. Unless we take this view of the case, we must hold that a State, without the consent of Congress, can make no sort of contract, whatever, with another State. That it cannot sell to another State, any portion of public property, (personal in its character, and not involving a question of territory) though it may so sell to individuals. That (for example) the State of Georgia cannot sell to the State of Tennessee, a surplus engine on its road, or any portion of its manufactured articles in the Penitentiary, without the consent of Congress.

We can see no advantage to be gained by, or benefit in such a provision; and hence, we think it was not intended.

We are supported in this view of the question we are considering, by Judge Story, who, in summing up his observations on this clause of the Constitution, remarks as follows: " We have thus passed through the positive prohibitions introduced, upon the powers of the States. It will be observed, that they divide themselves into two classes; those which are political in their character, as an exercise of sovereignty, and those which more especially regard the private rights of individuals. In the latter, the prohibition is absolute and universal. In the former, it is sometimes absolute, and sometimes subjected to the consent of Congress." (3 *Story Com. on Con. Sec.* 1400.)

The prohibition which we are considering, is one of those which is " Subjected to the consent of Congress;" and according to this eminent jurist, it follows that it is one of those " Which are political in their character." If we admit then, that this Act of 1847 is a feature in a compact between two States; yet, is it nothing more than an agreement, that the right of way shall be granted to certain citizens, for the pur-

pose of constructing a Rail Road, and is in no wise political in its character, nor conflicting with the authority of the General Government; and therefore, we hold that the consent of Congress was not necessary to its validity.

2. Our next reason for this opinion is, that the rights of the defendants, under the Act of 1847, do not depend upon any compact between Tennessee and Georgia. It may be assumed, that this Act would not have been passed, but for the passage of a similar Act by Tennessee; and that both had their origin in an agreement between the States, unaccompanied with the consent of Congress; and yet, it would seem that this Act *quoad* the rights of the defendants is constitutional and valid. They were no parties to any unconstitutional compact; but as private citizens contracted with the State of Georgia, for this franchise, and upon the faith of this Act, proceeded to put their work, investments and improvements upon the land to which this franchise attached.

[9.] The other objection is, that the State of Georgia could not give authority to the East Tennessee & Georgia Rail Road Company, as a corporation in the State of Tennessee, to extend their road into Georgia.

We know of no reason why the State should not exercise the power here questioned. If it have the authority to grant the right of way over any portion of its territory, and has not parted with this right, we see not why it should not grant this franchise to persons residing out of the State, as well as to persons within the State, if, in the opinion of the Legislature, the public good is thereby promoted.

It is true, that a corporation can have no legal existence out of the sovereignty by which it is created; yet it does not ensue, that its existence as an artificial person, capable of contracting, may not be recognized elsewhere. In the language of Ch. Jus. Taney, in the case of *The Bank of Augusta vs. Earle,* 13 *Pet.* 588, "Its residence in one State creates no insuperable objection to its contracting in another."

This point is expressly decided in that case, by the Supreme Court of the U. S.; and effectually disposed of, in language

like the following: " It is sufficient that its [the corporation's] existence as an artificial person, in the State of its creation, is acknowledged and recognized by the law of the nation where the dealing takes place ; and that it is permitted by the law of that place, to exercise there the powers with which it is endowed. (See also, *Angel & A. on Corp.* 97, 98.)

Let the judgment be affirmed.