CITY COUNCIL OF AUGUSTA *et al.* v. AUGUSTA-AIKEN RAILWAY AND ELECTRIC CORPORATION.

Under the facts and the law applicable, it was not error to grant an injunction restraining a municipal corporation from collecting from a street railroad company an assessment for a portion of the cost of paving a street.

No. 1569. OCTOBER 2, 1920.

34

Injunction. Before Judge Hammond. Richmond superior court. June 24, 1919.

*Isaac S. Peebles Jr.,* and *Archibald Blackshear,* for plaintiffs in error.

*Wright & Wright and Jackson* and *Barrett & Hull,* contra.

ATKINSON, J. Prior to April 6, 1896, the Augusta Railway Company was insolvent and in the hands of a receiver. Certain persons undertook to reorganize the company, introduce new capital, and operate the company's street railroad. As a matter of inducement, the City Council of Augusta, on the date above stated, passed an ordinance relieving " the Augusta Railway Company or its reorganized or successor company from constructing and keeping in repair any of the streets or parts of streets on which said company's tracks are or may be located." On April 25, 1896, the board of commissioners of the Village of Summerville passed an ordinance declaring, in part: " That, from and after the passage of this ordinance, the said Augusta Railway Company, its reorganized or successor company, in consideration that it has promised and covenanted with said Board of Commissioners to operate at least a twenty-minute schedule on the line of its cars between said Village and the City of Augusta, shall be exempt from paving, constructing, or maintaining any portion of the streets in said Village; this exemption to continue for and during but not exceeding the term of the present charter of said Company, and in no event is it to be construed as a license or grant in perpetuity: Provided, that whenever the said Village authorities shall change the grade of any of the streets upon which the tracks of said Company are laid, then the said Company shall at once change its tracks to conform to said altered grade. " The company was reorganized as contemplated, and large investments were made in operating and extending the railroad system. In 1901 certain members of the City Council of Augusta initiated a movement to repeal the ordinance of April 6, 1896. The railway company opposed the repeal, and a compromise was eventually agreed upon, which was expressed in an ordinance unanimously passed by the City Council of Augusta on February 5, 1901, whereby it was provided: that the street-railway company, in addition to the obligation imposed by the city council upon the Augusta Railway Company in the ordinance of April 6, 1896, should pay $1,666.66

per annum for the remainder of the life of its charter, as an annual contribution for and in lieu of street-paving between its tracks and three feet on each side, and in lieu of any obligation to construct and maintain a portion of the bridges over which its tracks passed, which amount the city would receive in full satisfaction of the company's obligation; and that the railway company would thereafter be relieved from any other special assessment or exaction for street paving, and for building and repairing any portion of bridges over which its tracks passed during the remainder of its charter. During the same year the charter of the City Council of Augusta was amended by legislative act, authorizing the city to make certain street pavements and improvements. Among other things, the amendment contained the provision: "Nor shall this act interfere with or affect the City's contract with the Augusta Railway & Electric Company referred to in the ordinance of February 5, 1901, or any legal contract which the City Council of Augusta is a party to in reference to street pavement or repavement; nor shall the existence of any contract which prevents the enforcement of this act against any owner of any track or tracks interfere with or prevent the enforcement hereof against any owner of other track or tracks." Thereafter the railway company and its successors continuously paid the annual amounts of $1,666.66, which were received by the city in accordance with the contract. By act of the General Assembly of August 19, 1911 (Acts 1911, p. 641), the limits of the City of Augusta were so extended as to include the Village of Summerville; the act of providing that the City of Augusta should be bound for payment of all the debts, and should perform all the lawful obligations, of the Village of Summerville; also that all streets, lanes, etc., in the Village of Summerville, which had been lawfully adopted, should become streets, lanes, etc., in the City of Augusta. Prior to the passage of the act last mentioned, a street called Monte Sano Avenue had been laid out within the corporate limits of the Village of Summerville, and duly adopted by ordinance as a street of that municipality. In 1916 the Augusta-Aiken Railway and Electric Corporation, under legislative authority and by consent of the municipalities of the City of Augusta and Village of Summerville, had succeeded to all of the contracts, rights, and franchises of the Augusta Railway Company. As such successor it was operating and maintain-

ing its line of electric railway along Monte Sano Avenue, above mentioned. By the act of August 19, 1916 (Acts 1916, p. 549), authority was conferred upon the City Council of Augusta to pave any of the streets of the city. The act provided, among other things, that " a railroad company now having, or which may hereafter have, tracks running through or across streets or public alleys of said city so improved, shall be required to pay to the City Council of Augusta the cost of macadamizing or otherwise paving, as the City Council of Augusta may direct, the width of its tracks and three feet on each side of every line of its track, on such street or public alley so improved. " The act did not contain any saving clause referring to the contracts between the Augusta Railway Company and the City Council of Augusta and the Village of Summerville, hereinbefore mentioned. In pursuance of the act the city proceeded to pave Monte Sano Avenue, and to assess a portion of the cost thereof against the Augusta-Aiken Railway and Electric Corporation as owner of the street-railway extending along that street. The railway company instituted an action to enjoin the collection of the assessment, on the ground that as successor to the Augusta Railway Company it was relieved by contract from assessment for paving purposes; and that the act of 1916, supra, could not constitutionally impair such contract, and did not have such effect. On the other hand the city contended that there was no valid contract; that assessments for street pavements are an exercise of the taxing and police powers of the city, and the agreement to exempt the railway company from liability for such assessments was itself unconstitutional and beyond the power of the city. At an interlocutory hearing the judge granted a temporary injunction, and the defendant excepted.

The ordinances of the City Council of Augusta adopted in 1896 and 1901, and the ordinance of the Village of Summerville adopted in 1896, and acted upon by the company, became binding as contracts under legislative authority and sanction. While the act of the city in laying street-paving assessments is the exercise of taxing power in a general sense, such assessments are not taxation within the meaning of the constitutional provision requiring taxation to be ad valorem and uniform. Assessment for pavement of streets, unlike ad valorem taxation for general purposes, is a matter within the discretion of the city, subject to the limitations contained in

its charter. The contract to exempt the railway company from street-pavement assessments, being under legislative sanction, was valid, and was not illegal, as contended, upon the ground that it was an unauthorized exemption from payment of taxes, or a surrender of the city's police power. The contract being valid, the provisions of the act of 1916 could not be so extended as to impair its obligations, and did not have that effect. Under this view the judge did not err in granting the injunction.

*Judgment affirmed. All the Justices concur.*