## 18465. HALL, administrator, v. SLATON.

STEPHENS, J. 1. In a suit instituted in a court of this State to recover damages for a tort committed in another State, where the plaintiff pleads in the petition, as the law of the other State applicable to the case upon its merits, not a statute of that State, but the law of that State as interpreted by the courts of that State and applied in that State, a rule which differs from the common-law rule as construed and applied by the courts of this State, the plaintiff is not pleading the common law of the foreign State, but is pleading that the law of the foreign State applicable to the case is other than the common law. *Selma, Rome & Dalton Railroad Co.* v. *Lacy,* 43 *Ga.* 461, 463; *Pattillo* v. *Alexander,* 96 *Ga.* 60 (22 S. E. 646, 29 L. R. A. 616).

2. In a suit instituted in a court of this State to recover damages for a tort committed in another State, which is a State in which the common law prevails,—as the State of Alabama,—the plaintiff may plead and prove, as the law applicable to the merits of the case, both the statutory and unwritten law of that State, which is other than the common law as would be applied to a similar situation by the courts of this State, and the courts of this State will apply to the case the law of the foreign State thus pleaded and proved, as construed and interpreted by the courts of that State. See 22 C. J. 928; Minor on Conflict of Laws, 530; 12 C. J. 200; Story on Conflict of Laws, § 642; 13 Am. & Eng. Enc. Law (2d ed.), 1069; 6 Am. & Eng. Enc. Law (2d ed.), 268; Houghtaling *v.* Ball, 19 Mo. 84 (59 Am. D. 331).

3. The speed at which an automobile is being operated may, like any other fact, be established by circumstantial evidence. The fact that an automobile, which ran off a bridge, broke through and tore down upright timbers which were consecutively placed on the side of the bridge at certain distances one from the other, the effect which the automobile had upon these timbers and the location of the automobile after it fell off the bridge are circumstances which would indicate the speed at which the automobile was traveling when it hit the upright timbers and ran off the bridge. Since the effect produced upon the timbers of the bridge by the automobile, and the inference to be drawn therefrom as to its speed when it collided with the timbers, can be more intelligently determined by a witness observing the condition of the timbers than by the members of the jury from a description of the condition of the timbers made by the witness, the witness's testimony as to his opinion of the speed at which the automobile was traveling when it collided with the timbers is, when the witness details the facts upon which this opinion is given, admissible in evidence. Such testimony is not inadmissible upon the ground that the witness was not acquainted with the size and weight of the particular automobile which caused the damage. Irrespective of the size and weight of an object, its rate of speed may be determined from the impression made by it upon another object.

4. The fact that the witness, after having testified to his opinion as to the speed at which, from his observation of the condition of the timbers on the bridge, the automobile was traveling when it hit the timbers, testified that he did not know what speed would break the timbers did not render inadmissible his testimony as to his opinion of the speed at which

the automobile was traveling when it hit the timbers. Such fact affects only the probative value of the testimony.

5. The fact that a witness was an expert automobile mechanic, who for 15 years had been acquainted with the mechanism and construction of automobiles and had driven high-powered automobiles, qualified him as an expert to testify that an automobile of the particular make of the automobile which ran through the timbers on the bridge was low geared and not built for speed, and that an automobile three years old, which had never been worked over within that period, such as the automobile which ran off the bridge, would not be capable of as high speed as when it was new.

6. Upon the trial of a suit against the driver of an automobile to recover damages for the homicide of a person who was riding in the automobile with the driver, where it was alleged in the petition that the homicide resulted from the negligence of the driver in operating the automobile at an excessive rate of speed, and in negligently failing to have it under control when passing over the bridge, and that as a result of such negligence the automobile tore through upright timbers on the side of the bridge and ran off the bridge, where there was evidence adduced to the effect that the automobile was traveling on a long, smooth highway, approaching the bridge at a speed of about sixty miles per hour, that in the road, near the entrance of the bridge, there was a small depression or ditch, and also a slight turn to the left in the roadway, that the driver of the automobile had, a few hours before, passed over the bridge and the roadway going in the opposite direction, that he was endeavoring to reach his destination before the death of a person who was dying, that afterwards it was stated in the presence of the driver that the automobile, when it ran through the timbers on the bridge, was traveling at a speed of sixty miles an hour, that the automobile, after it had turned to the left onto the bridge, ran through the timbers upon the right side of the bridge, the evidence adduced upon the trial, and the evidence as to the speed of the automobile, which was erroneously rejected, to the effect that the automobile, when it ran through the timbers on the bridge, was being operated at a speed of fifty or sixty miles an hour, authorized the inference that the driver of the automobile drove it onto the bridge at a negligent rate of speed, and was negligent in not having the automobile under control at the time, and that, as a result of this negligence, which amounted to a failure on the part of the driver to exercise ordinary care and diligence in operating the automobile, the person riding with him was killed; and since the rule of law applicable in the State of Alabama in which the accident occurred, which rule, the plaintiff alleged in the paragraphs of the petition which were stricken on demurrer was, that the defendant owed to the person killed only ordinary care and diligence for his safety, the evidence adduced and illegally rejected would, under the law of Alabama pleaded as applicable to the case, have authorized a verdict for the plaintiff.

8. The trial court erred in striking, on demurrer, the paragraphs of the plaintiff's petition in which the plaintiff pleaded both the unwritten and the statute law of the State of Alabama, as construed by her courts,

and erred in rejecting testimony as indicated above, and in thereafter granting a nonsuit.

*Judgment reversed. Bell, J., concurs.*

JENKINS, P. J., dissents from the rulings stated in the first and second paragraphs above, but concurs in the judgment.

DECIDED SEPTEMBER 26, 1928.

*Hugh Reed, Porter & Mebane,* for plaintiff.
*Graham Wright,* for defendant.