## GEORGIA POWER COMPANY et. al. v. CITY OF DECATUR.

188

No. 10029.   September 30, 1935.

*Colquitt, Parker, Troutman & Arkwright,* for plaintiffs in error.
*Branch & Howard, Heyman & Heyman, Bond Almand, Scott Candler,* and *C. Murphey Candler Jr.,* contra.

Graham, Judge.   This case came on writ of error from the superior court of Fulton County, and the judgment was affirmed by this court. *Georgia Power Co.* v. *Decalur,* 179 *Ga.* 471 (176 S. E. 494).   The Supreme Court of the United States reversed that decision, and remanded the case to us for further proceedings not inconsistent with their opinion.   Georgia Power Co. *v.* Decatur, 295 U. S. 165 (55 Sup. Ct. 701, 79 L. ed. 702).   The judgment was reversed because we held that the rejection of testimony offered on the trial, to the effect that the paving in question was of no benefit to the company, was immaterial.   By reference to the opinion it appears that the Supreme Court of the United States so held because it construed our decision to hold that our State statute which authorized, and the ordinance which directed, an assessment for the cost of improvements required as the basis of their operation the existence of benefits.   In this connection the Supreme Court of the United States said: "As we read its decision, the court below

held that the State statute which authorized, and the ordinance which directed, an assessment for the costs of improvements require, as the basis for their operation, the existence of benefits; and the case was dealt with in that view. . . In this court the city insists that under the Georgia law, 'The general rule that assessments against abutting owners for street improvements are sustainable only to the extent of special benefits to abutting property is not applicable to railway companies having tracks in the street improved.' And it seeks to sustain the assessment as an exercise of the police power and the alleged power of the State to alter or amend corporate charters. If the Georgia statutes had been thus construed by the State Supreme Court, a different question would be presented. The difficulty, however, is that the court, as we have said, construed the statute as contemplating the existence of benefits to the railway as a basis for the assessment, but required the railway companies to overcome a legislative presumption that such benefits existed by proof of an arbitrary abuse of the legislative authority 'because of no benefit.' By that construction we are bound, and in accordance with it must consider and determine the case. The construction becomes part of the statute as much as though it were found in appropriate words in its text."

We did not mean to so construe our State statutes and the ordinances adopted thereunder, notwithstanding our opinion was so unhappily written as to be open to such construction. At the time the case was before us, the plaintiff in error was insisting that the paving assessment was illegal because of no benefit to it. This contention had been previously made. When the city proposed the paving, the power company objected, and offered, unless it was relieved of the burden, to surrender its franchise and remove its tracks from the streets. This offer was declined by the city, and on petition of the city the power company was restrained from abandoning its lines. That judgment was affirmed by both this court and the Supreme Court of the United States. 168 *Ga.* 705 (149 S. E. 32), 262 U. S. 432 (43 Sup. Ct. 613, 67 L. ed. 1065). The Supreme Court of the United States held that the 5-cent rate fare contract made between the city and the Collins Park Company was still in force and binding on the Georgia Power Company, that by the contract the city gave its consent to the use of its streets by the power company, adopted this court's construction of the acts of

the legislature and the ordinance and its decision as to the effect of the contract; and further held: "The losses attributable to the stretch of track in question and the 5-cent fare are immaterial while the rate contract continues." Georgia Power Co. *v.* Decatur, 281 U. S. 505 (50 Sup. Ct. 369, 74 L. ed. 999). Theretofore the United States Supreme Court had held, on an appeal of the power company from a decision of this court: "Where a street-car company has made a binding contract with a municipality for rates, the Supreme Court of the United States will not consider the question whether or not they are confiscatory." Georgia Power Co. *v.* Decatur, 262 U. S. 432 (43 Sup. Ct. 613, 67 L. ed. 1065). With these decisions in mind, it was our opinion that in view of the contract as to the five-cent fare the attack made upon the paving assessment by the power company because of no benefit was groundless, even assuming that in other circumstances the assessment for the costs of the paving might, as contended by the company, have required as the basis of its operation the existence of benefits. Since the lack of benefit was due to the fact that the contract for the low fare rendered the operation of the railway profitless, the testimony offered by the power company on the trial of the case to the effect that the paving was of no benefit to the company was, in our opinion, immaterial to a consideration of the case. However, we did not mean to construe our State statutes in reference to street paving, and the liability therefor on the part of street railways occupying and using the paved street, to require as a basis for their operation the existence of benefits. This court had not in any previous case held that the right to assess the costs of paving streets against street-railway companies occupying and using the streets rests on benefits from the pavement to the street-railway company. To the contrary this court, in older cases which were binding on us, held that under the Georgia law street-railway companies occupying and using the streets of a municipality with their tracks were compelled, irrespective of benefits to the property, to share the burden of paving and keeping the streets so used in repair. Such was the holding in *Georgia Railway & Power Co.* v. *Atlanta,* 153 *Ga.* 335 (113 S. E. 420), and in *City of Atlanta* v. *Gate City Street Railroad Co.,* 80 *Ga.* 276 (4 S. E. 269). Under the construction which the Supreme Court of the United States understood this court to place on the laws of this State, to wit, that the right of

assessing paving costs against street-railway companies rested on benefits to the companies, that court reversed the judgment on the ground that evidence offered by the power company on the trial, to the effect that the paving was of no benefit to the company, was rejected as immaterial, and remanded the case to this court for further proceedings therein not inconsistent with their opinion.

Now, before the mandate of the Supreme Court of the United States has been made the judgment of this court in the case, the City of Decatur, alleging that we have not construed the right under the Georgia law to make paving assessments against street-railway companies using the streets to rest on benefits to the companies, and that the decision of this court, as construed by the Supreme Court of the United States, leaves open and undecided the question whether assessments against street-railway companies for street improvements, in respect to streets occupied by their tracks, are sustainable only upon the theory of special benefits to such railway companies, or whether such assessments are sustainable under the police power of the State to alter or amend corporate charters, moves that in giving further proceeding to the case we pass upon this question, and either affirm or give direction to the lower court in the case accordingly. The power company resists this motion, contending that the question has been decided aversely to the contention of the city; that in any event this court is without jurisdiction to consider the case further; and that all we can do is to reverse the judgment and remand the case to the lower court for another trial not inconsistent with the opinion of the United States Supreme Court. So it becomes necessary for us to consider the proper construction under the Georgia law of the right to assess the costs of street paving against the street railway using the streets paved, and also what further jurisdiction we may now take of the case.

■ We deal first with the question of jurisdiction. The question is novel in this court. Heretofore we have not been confronted with a similar situation. Ordinarily this court loses jurisdiction of a case with the passing of the term at which it is decided, or with the filing of the remittitur in the case in the court below. After the term at which the case was decided has adjourned, or after the remittitur has been filed in the court below, this court, under the Code of 1933, § 24-4544, will not entertain any motion for re-

hearing. This rule has been adhered to by this court. *Greene County* v. *Wright,* 127 *Ga.* 150 (56 S. E. 288). The instant case does not come within this rule; it is not a rehearing. Under mandate of the United States Supreme Court it is before us for further proceeding not inconsistent with its opinion. If we were to hold that we have no further jurisdiction of the case, we would be powerless even to alter our decision of affirmance by making the judgment of the United States Supreme Court the judgment of this court. But the case, under the decision of the United States Supreme Court, is actually before us for disposition at the present term. The appeal of the case tolled its term, and within the sense of the statute the term of the court has not yet passed. There is ample authority, both of the higher courts of other States and of the United States Supreme Court, that we may consider and dispose of the case not inconsistently with the opinion of the United States Supreme Court. The following cases support this conclusion: Ward v. Board of Commissioners, 253 U. S. 17 (40 Sup. Ct. 419, 64 L. ed. 751) ; Schneider Granite Co. v. Gast Realty &c. Co., 245 U. S. 288 (38 Sup. Ct. 125, 62 L. ed. 292) ; Harding v. Harding, 148 Cal. 397 (83 Pac. 434) ; Kinzell v. Chicago &c. R., 33 Idaho 1 (190 Pac. 255) ; Ettor v. Tacoma, 77 Wash. 267 (137 Pac. 820) ; Goodtitle v. Kibbe, 1 Ala. 403 ; Gibson v. Chouteau, 50 Mo. 85 ; Simonson v. Monson, 36 S. D. 245 (153 N. W. 1020) ; St. Louis &c. R. v. McWhirter, 155 Ky. 301 (159 S. W. 796).

If we should hold that we have no authority to give any direction other than to send the case to the lower court to be tried not inconsistently with the opinion of the United States Supreme Court, it would mean that we held that this court construed the right to pave the street, and to assess a reasonable portion of the cost thereof against a street-railway company occupying and using the street with its tracks, to require under our law, as its basis, special benefit to the railway company, and that the United States Supreme Court was correct in so construing our opinion of our law; whereas such is not the construction we intended to place upon our law in such cases. It would mean that the Georgia Power Company in this case might evade the payment of the assessment for which, according to the facts of the case under our law as we construe it, the company is liable, and might enable it to avoid the payment of this obligation on the false theory that we construe the right to make

the pavement and assessment therefor to rest on benefit to the company. Our jurisdiction is not so circumscribed as to forbid a consideration and hence a disposition of the case under a proper construction of the law. It would strain our law to force a termination of the case on a construction of the law which was not intended and which is not in accord with previous decisions of this court. Our practice is founded too much in reason and common sense to say we have made a mistake in language which we can not correct while yet the case is before us, or that we are impotent with the case in our hands to correct our opinion which appears to have been so inaptly written that it fails to express its true intent and meaning. It is within the power of courts, on motion of a party or on their own motion, to correct and amend their judgments to make them correspond with the findings of the court. Hence we hold as to this case that the term of the court has not passed, that we have jurisdiction to consider the case, revise our opinion to make it conform to its true intent and meaning, and give further direction not inconsistent with the opinion of the Supreme Court of the United States. Such is in conformity to the former practice of this court, and that of the Court of Appeals of this State, in *Slaton* v. *Hall,* 172 *Ga.* 675 (158 S. E. 747), where the case was nonsuited in the trial court. The Court of Appeals (38 *Ga. App.* 619, 144 S. E. 827), reversed the judgment on the construction that the Alabama courts placed on the law applicable to the case. This court (168 *Ga.* 710, 148 S. E. 741, 73 A. L. R. 891) reversed the judgment of the Court of Appeals on its application of that construction to the law of the case, which ruling meant an affirmance of the judgment of the trial court unless the Court of Appeals gave further consideration and direction to the case. It went back from this court to the Court of Appeals after the term when it was decided by the Court of Appeals had passed. The Court of Appeals further considered the case (40 *Ga. App.* 288, 149 S. E. 306), and revised its decision so as to conform to the opinion of this court, but, instead of affirming the judgment, gave an additional reason why the nonsuit should not have been granted, adhered to its judgment of reversal, and ordered another trial. See also 4 C. J. 1220, § 3270.

■ Now let us consider the proper construction to be placed on the Georgia law authorizing pavement of the street in question,.

and the assessment of part of the cost thereof against the power company occupying and using the street with its street-cars and tracks. When the Georgia Power Company was organized and chartered, the general law of the State, enacted under the State constitution, in reference to street and interurban railways expressly stipulated: "Provided that no street-railroad or interurban railroad incorporated under this chapter shall be constructed within the limits of any incorporated town or city without the consent of the corporate authorities; and provided further that all railroad companies incorporated under this chapter shall be subject to all just and reasonable rules and regulations by the corporate authorities, and liable for all assessments and other lawful burdens that may be imposed upon them with reference to the railroad or the portion thereof located within the limits of said municipal corporation." Code of 1933, § 94-1002. The City of Decatur was duly incorporated by act of the General Assembly. By legislative acts approved August 18, 1919, and August 12, 1924 (Ga. L. 1919, p. 934; 1924, p. 534), amending the charter of the City of Decatur, the General Assembly of this State conferred full power and authority upon the city, in the discretion of its commissioners, to pave any street therein, and, when street-railway tracks are located in a street ordered paved, to assess the cost of paving of that portion of the street between and for two feet on each side of said tracks against the company owning the tracks, and to assess the remainder of such costs against the abutting property. When the Georgia Power Company accepted its charter and with the consent of the city entered on its streets with its railway-tracks, it did so subject to the general law of the State and to the power of the State to amend the city charter by further legislation dealing with the upkeep of the streets. Under its laws the State reserves the power and authority to withdraw, alter, or amend private charters. Under the laws of this State this legislation was authorized. The Code of 1933, § 79-101, provides: "Persons are either natural or artificial. The latter are the creatures of the law, and, except so far as the law forbids it, subject to be changed, modified, or destroyed at the will of their creator; they are called corporations." And "In all cases of private charters granted since January 1, 1863, the State reserves the right to withdraw the franchise, unless such right is expressly negatived in the charter." § 22-1202.

So when the Georgia Power Company was organized and with the consent of the city entered on the streets with its railway-tracks, it did so subject to the general law of the State and the power of the State to amend the city's charter by further legislation with respect to the upkeep of the streets. Atlantic & Gulf R. Co. *v.* State, 98 U. S. 359 (25 L. ed. 185); *West End & Atlanta Street R. Co.* v. *Atlanta Street R. Co.,* 49 *Ga.* 151; Fort Smith Light &c. Co. *v.* Board of Improvement, 274 U. S. 387 (47 Sup. Ct. 595, 71 L. ed. 1112); Fair Haven &c. R. Co. *v.* New Haven, 203 U. S. 379 (27 Sup. Ct. 74, 51 L. ed. 237); Sioux City Street Ry. Co. *v.* Sioux City, 138 U. S. 98 (11 Sup. Ct. 226, 34 L. ed. 898); *Union Branch R. Co.* v. *E. T. & G. R. Co.,* 14 *Ga.* 327. The acts are not in violation of the provision of the constitution of this State (art. 1, sec. 4, par. 1), to the effect that "no special law shall be enacted in any case for which provision has been made by an existing general law," and that "No general law affecting private rights shall be varied in any particular case by special legislation." *Weed* v. *Savannah,* 87 *Ga.* 513 (13 S. E. 522). Under ordinances duly adopted by the city under the authority of its charter aforesaid, the street in question was paved and the cost assessed accordingly against the power company as owner of the tracks in the street.

There is no question as to the regularity of the assessment under the general law of the State, and the charter of the city as amended, and the ordinances duly enacted thereunder. It has already been determined that the paving was done and that the assessment therefor was made in conformity to the law. Payment therefor is undertaken to be avoided by the power company on the ground that the pavement was of no benefit to the company. It has been held by this court, in construing the law of the State in reference to street paving and cost thereof, that a street railway could not defend against the payment on the ground of no benefit. In *Georgia Railway & Electric Co.* v. *Atlanta,* 144 *Ga.* 722 (87 S. E. 1058), it was held that "a street-railway company which owns a right of way on the side of a street in a municipality, which right of way is 30 feet wide and is occupied by a double track, is not exempt from assessment for a sanitary sewer in the street on which it abuts, on the ground that the railway company can not receive any benefit from the improvement so long as its property is subjected to the present particular use."

In *Speer* v. *Athens*, 85 *Ga.* 49 (11 S. E. 802, 9 L. R. A. 402), this court, in dealing with sidewalk and street assessments, quoted from Cooley's "Taxation," declaring: "The power to determine when a special assessment shall be made and on what basis it shall be apportioned is wisely confided to the legislature." It is not left to juries, whenever a property-owner resists an assessment, to say that the taxing power has abused its discretion. "Such a construction applied in tax cases would work a thorough and radical change in the principles on which taxation is now supposed to rest. It would cripple the legislative power and subject the action of the department whose function it is to make laws on its own views of the questions of public interest and public policy which the laws involve, to a review and possible reversal at the hands of a jury. . . To make the juries the assessors of the claims of the State upon individuals could only introduce anarchy; one jury reaching one conclusion regarding the public needs and another another. . . If anything can be regarded as settled in the municipal law in this country, the power of the legislature to permit such assessments and to direct an apportionment of the cost by frontage should by this time be considered as no longer open to controversy."

In *Hayden* v. *Atlanta*, 70 *Ga.* 817, wherein it was questioned that the legislature of this State had authority by amendment to its charter to authorize the City of Atlanta to grade, pave, and improve its streets and to assess the costs of the improvement against the abutting real estate, this court held that such assessment was not such exercise of the tax power of the city as to require same to be uniform and ad valorem, that it was not taking private property for public use without compensation, but it was the exercise of governmental powers by a municipality which is part of the government of the State, and is part of the police power of the State conferred on the city. It was also held, which is the law of the State, that every person in this State owes a duty to work the public roads, and it is in the power of the legislature, representing the public, to compel the performance of this duty. In this connection this court said: "Every person in this State owes a duty to the public to work the public roads and highways, and it is in the power of the legislature, representing the public, to compel a performance of this duty, and it may confer upon municipal corporations this power; it is also competent to authorize these corporations to have

the work done on the public streets and thoroughfares of the various municipalities of this State in such manner, by pavements, crossings, drains, and curbings, as may be necessary, and to compel the owners of real estate fronting thereon to pay the costs and expenses of such improvements. There is nothing in the constitution of this State or of the United States to prevent this being done. I can see no reason why the legislature may not force every person to work on the public roads and highways, and perform such service in proportion to the land that such person may own lying on such roads. If this power exists under the constitution of this State, why can not the State make the improvements itself and assess the landowners to pay for the same? This is but the exaction of a duty the person owes the public; and in the case before us the power conferred by the legislature on the City of Atlanta, and the exercise of that power by the city to make these improvements and to assess and collect the cost of the same from the property owner, is the exercise of governmental powers by a municipality which is a part of the State government; it is, under the circumstances, the same as if done by the State itself. Again, it is a part of the police power of the State conferred on this city. To have sewers is to provide for the health of the people of the city; to have well paved streets and sidewalks is to afford reasonable accommodation to the public; also, the means for fire engines to reach the scene of conflagration; all these things are for the public benefit. The blessings conferred by these improvements are shared by the owners of the property assessed in a greater degree than the general public; but whether this was so or not, the power resides in the State, and the legislature may by law confer upon municipal corporations the right to make these improvements and to assess the property fronting on the streets thus improved, for the cost of the same. . . But the power to have worked, opened, repaired, and improved the public highways, streets, and roads may be exercised by the legislature in such manner and way and under such circumstances as may be deemed best. There is no limitation imposed by the constitution upon this power; it rests upon the sound discretion of the legislature. Salus populi suprema lex." See *Georgia Railway & Electric Co.* v. *Decatur,* 29 *Ga. App.* 653 (116 S. E. 645). Under statutes and ordinances similar to those under consideration, the City of Atlanta brought a mandamus proceeding against the Geor-

gia Railway & Power Company to compel the company to repave a street between its tracks and for a reasonable distance on each side. The mandamus was granted, and that judgment was affirmed by this court. *Georgia Railway & Power Co.* v. *Atlanta,* 153 *Ga.* 335 (113 S. E. 420). While it is not expressed in so many words, yet that case necessarily turned on this court construing the law of this State to mean that irrespective of benefits the duty rested on the railway company to bear its portion of the burden of keeping the streets in proper condition. The court declared: "But in ascertaining the full extent of the liability of the railway company in regard to the matters here involved where the statutes and the contracts do not cover all phases of the question, we can take into consideration the inherent and implied duties of the railway company which occupies with its tracks a portion of the streets of the city. . . When street-railway companies occupy portions of streets, such portions are no longer in the free, unincumbered, and exclusive use of the public, but to the company is given not only a concurrent but a superior right to use them, and with this right goes a corresponding responsibility." This case under its facts and circumstances necessarily hinged on this court construing the law of this State to mean, that, irrespective of benefits or the absence thereof to the company, the duty rested on the railway company to bear its just share of the burden as fixed by the statute of keeping the streets in proper condition. Such was the holding of this court in *City of Atlanta* v. *Gate City Street Railroad Co.,* 80 *Ga.* 276 (4 S. E. 269). Assessments for local improvements such as street paving and sewerage are not taxes within the meaning that taxes must be ad valorem and uniform, yet they are an exercise of the taxing power and also come within the police power of the State. *Georgia Railroad &c. Co.* v. *Decatur,* 137 *Ga.* 537 (73 S. E. 830, 40 L. R. A. (N. S.) 935); *City Council of Augusta* v. *Augusta-Aiken Ry. &c. Cor.,* 150 *Ga.* 529 (104 S. E. 503); *City of Brunswick* v. *Gordon Realty Co.,* 163 *Ga.* 636 (136 S. E. 898); *Hayden* v. *Atlanta,* supra. Under the general law of this State, the amendments to the city charters, and the ordinances adopted thereunder, the City of Decatur had the legislative authority under the police and taxing power of the State and the right to amend city charters, irrespective of benefit or want of benefit to the street-railway company occupying and using its streets with its railway tracks, to order the

paving and to make the assessment against the company. This conclusion is supported, not alone by the opinion of the courts of this State, but also by the authority of other States and by the Supreme Court of the United States. See decisions of that court cited above, and Durham Public-Service Co. *v.* Durham, 261 U. S. 149 (43 Sup. Ct. 290, 67 L. ed. 580).

■ It is not our purpose to hold, where the legislative authority is manifestly abused, that such would not be the subject of inquiry by the court. While it was not in point or necessary to determine the case, this court stated, in *City of Atlanta* v. *Gate City Street Railroad Co.,* supra, as follows: "We do not intend to decide that, where the city exercises this great power in an arbitrary manner and without sufficient reason, in a proper case made the jury may not consider the necessity for the improvement, or its unreasonableness, or whether the improvement . . is to be made out of such costly materials as may result to the great injury of the citizen owning property along said street. .· . And while the city may exercise its legislative discretion as to when the improvement shall be made and the material with which it may be made, yet it is for the jury to determine under all the facts whether the same is reasonable or whether there be a necessity therefor." The court did not in this case expressly hold that even where the city arbitrarily exercises its legislative authority such would be a subject of inquiry by the courts; yet it may be assumed as a sound principle that where the legislative authority is manifestly abused by the city, the same would be inquired into by the courts in a proper case made. For instance, a case that might be a proper subject for such inquiry may be imagined. Suppose the street had just been paved and the railway company had paid its just portion of the cost of the paving, and the city were to decide to repave it out of marble or more costly material, such would appear to be that manifest abuse of the legislative authority as to bring it within the inquiry of the court. In the case before us, however, no such contention is made. The question made, that the paving is of no benefit to the company, when considered under the .law applicable to paving assessments against street-railway companies, does not come within the rule that it may be subject to the inquiry of the courts.

■ We do not herein take issue with the Supreme Court of the United States. We would not circumvent its opinion. Its de-

cision is binding on us. To our minds it is evident from its opinion that if that court had not construed our opinion as placing the right to pave and assess therefor street-railway companies on benefit to the company, it might not have reversed the judgment. In this connection, as hereinbefore recited, that court stated: "In this court the city insists that under Georgia law 'the general rule that assessments against abutting owners for street improvements are sustainable only to the extent of special benefits to abutting property is not applicable to railway companies having tracks in the street improved,' and seeks to sustain the assessment as an exercise of the police power and the alleged power of the State to alter or amend corporate charters. If the Georgia statutes had been thus construed by the State Supreme Court, a different question would be presented." And then the court proceeded to reverse the judgment on the idea that we construed the Georgia statute as contemplating the existence of benefits to the railway as a basis for the assessment. So we reach the conclusion that had that court understood us to construe the right to pave and make assessment therefor against the street railway to be within the police and taxing power of the State, and not to depend on benefit to the company, it might not have reversed the judgment. We were dealing with the case, as hereinbefore stated, on the theory that the defense based on lack of benefit, even if such was the basis of the right to make the assessment, was insufficient. Hence we were inadvertent in the language used. So, we repeat, our courts have never held, and we did not mean to hold, that the right to make paving assessments against a street-railway company using the street with its tracks rested on benefit to the company. But the construction placed upon our statute by our courts heretofore and the construction we place upon the same is that the City of Decatur, under the State constitution, the general laws of the State, the police and taxing power of the State, and under the right of the State to amend city charters, had the legislative authority, without regard of benefit to the company, to pave the street occupied and used by the company with its tracks, and to assess the portion of the costs assessed against the company. With the ambiguities removed from our opinion and our construction of our law made clear, it is manifest the judgment should be affirmed, and that this holding is not

inconsistent with the opinion of the Supreme Court of the United States in the case.

There is another cause, not inconsistent with the opinion of the United States Supreme Court, why the judgment of the lower court should be affirmed. The direction of the verdict was demanded. The paving in question was commenced in May, 1925, and completed in May, 1926. While the street-railway company protested against the pavement and threatened to abandon its line on account of same, yet it took no legal steps to prevent the paving. "Where a city has jurisdiction and power to make a contract for street improvements, and such contract is illegal for some reason, due to irregularity or illegality in the exercise of the power conferred upon the city, no assessment can be levied and enforced against the owners of abutting property, if they act promptly in attacking the illegal contract before the improvements have been made; but if the owners of abutting property wait until the improvements have been made by the contractor and they have received the benefits thereof, they will be estopped from attacking the illegality of the assessment upon the ground that the contract under which the improvements were made was illegal, the illegality not arising from lack of jurisdiction or power to make the contract under which the improvements were made, but from an illegal exercise of such jurisdiction or power. A mere protest against street improvements, or a mere threat to take legal proceedings to prevent such improvements, is not sufficient to defeat such estoppel. Where such estoppel is operative, it will be enforced at law or in summary proceedings, as well as where parties are seeking affirmative relief in equity against the enforcement of assessments for street improvements." *Bower* v. *Bainbridge,* 168 *Ga.* 617 (148 S. E. 517). "After the mayor and general council, on the report of its street committee, finally adopts an ordinance establishing a taxing district for a proposed improvement, and providing for the improvement, and the same is not stopped by injunction or other legal process, then the owners will be concluded from further objecting thereto, either as to the form in which the work is done, or the map made, or any other technicality connected therewith; and when such owners do not take steps to enjoin such ordinance or the assessments levied on their property until the improvement has been practically completed, and the city has expended a large sum in

making the improvement, relying upon such assessments to meet the expense, they will be precluded and estopped from attacking such assessments upon the grounds, (a) that the collection thereof will deprive them of their property in violation of the due process clauses of the State and Federal constitutions, and (b) that the levy of such assessments has been made in an arbitrary and unreasonable manner." *Avery* v. *Atlanta,* 163 *Ga.* 591 (136 S. E. 789). At the time of the paving, which was done in accordance with the law, the street railway was being operated by the Georgia Railway & Electric Company. This company stood by and without any legal action permitted the paving and the expense thereof to be incurred, with knowledge that the city intended to hold it liable for a portion of such expense. Thereupon the paving assessment became a binding obligation upon the company. Afterwards this company merged into the Georgia Power Company, which company in the merger assumed to pay all assessments outstanding against the electric company. It is now too late to raise the question that the city abused its legislative discretion in ordering the paving and making the assessment for the costs thereof. The Georgia Power Company is estopped, by reason of the laches of the Electric Company in the premises, from making the defense offered against the payment of the assessment. This conclusion is in line with numerous decisions of this court. *Raines* v. *Clay,* 161 *Ga.* 574 (131 S. E. 499) ; *Cochran* v. *Thomasville,* 167 *Ga.* 579 (146 S. E. 462) ; *Mayor &c. of Montezuma* v. *Brown,* 168 *Ga.* 1 (147 S. E. 80) ; *Bass* v. *Milledgeville,* 180 *Ga.* 156 (178 S. E. 529).

■ It would seem useless to send the case back to the lower court for another trial, which, if tried in accordance with the proper construction of the law of this State, would necessarily result in a verdict for the city. May we here suggest that if we are wrong in our construction of the case, our judgment herein is open to further review and correction by the Supreme Court of the United States.

■ The decision heretofore rendered by this court in *Georgia Power Co.* v. *Decatur,* 179 *Ga.* 471 (supra), is hereby so modified as to make clear the intention of this court as expressed in the foregoing opinion.

*Judgment affirmed. Beck, P. J., and Gilbert, Bell, and Hawkins, JJ., concur in the judgment. McLaughlin, J., dissents.*

GILBERT, Justice, concurring specially. I concur in the result reached, but not in all that is said in the opinion. On the question whether this court has jurisdiction to render any judgment other than to make the judgment of the United States Supreme Court the judgment of this court, my concurrence is restricted to the facts in this case. It would seem to be wiser so to limit the language in· this respect that the ruling will not furnish a precedent for extending the jurisdiction. Legislation, rather than judicial construction, may be found necessary.

McLAUGHLIN, Judge, dissenting. I can not agree with the learned gentlemen that this court has any jurisdiction in this case. The judgment having been reversed by the Supreme Court of the United States, the appropriate procedure, in my opinion, would be to make the judgment of that court the judgment of this court.